(November 25, 1905.)

## FOUNTAIN v. LEWISTON NATIONAL BANK.

[83 Pac. 505.]

SUIT TO DECLARE A DEED A MORTGAGE AND TO REDEEM—TRUST AND FIDUCIARY RELATION—ADVERSE POSSESSION—POSSESSION UNDER COLOR OF TITLE—STATUTE OF LIMITATIONS.

1. Where the plaintiff sought to establish a trust and fiduciary relation as having existed between her ancestor and one of the defendants, and the evidence shows that the dealings and business transactions which took place between the parties were at arm's-length, and in the ordinary course of dealings in business transactions of the character involved, and no special, peculiar, or extraordinary degree of trust or confidence appears to have been reposed by the one party in the other, and a fair market price has been paid and the transaction has been made in the open and with the full knowledge of the nature thereof, and all the facts surrounding the same, and the transaction appears upon its face to have been equitable and just, the finding of the court that no trust or fiduciary relation existed between the parties cannot be disturbed on appeal.

2. Where M. owed to the bank the principal and interest on an overdue mortgage previously executed, and on October 18, 1889, executed to the bank a warranty deed of conveyance of the premises covered by the mortgage for the stipulated consideration of the

amount of principal and interest then due, and on the same date took a written agreement and contract from the bank giving M. the option until June 18, 1890, to repurchase the premises for the amount of principal and interest named as the consideration for the deed, and thereafter and on March 28, 1890, in consideration of the further sum of more than $1,700, executed what purported to be a release of the agreement and contract for purchase of date October 18, 1889, and all the parties to these several transactions understood and believed that the conveyance and purported release amounted to a transfer of both the legal and equitable title from M. to the bank, and thereupon the bank and its successors in interest with full knowledge and consent of M., entered into the sole, exclusive and open possession of the premises and continued such possession uninterruptedly and with the knowledge and consent of and without objection from M., *held,* that the possession by the bank and its successors was adverse and hostile to any and all claim of title or possession by M. and her heirs, and that such adverse possession did, upon the lapse of the statutory period of five years, constitute a complete bar to an action by M.'s heirs to redeem the property.

3. Where the full purchase price agreed upon was at the time paid and the purchaser took possession under written instruments which both the vendor and vendee at the time thought sufficient to pass both the legal and equitable title to the premises, the possession so taken and maintained will be held to have been adverse to the vendor, although it should thereafter appear that the writings under which the possession was taken did not amount to the transfer of title but was in law only a mortgage.

4. In such case, even though it should be conceded that the entry was not made under an absolute title, it is clear that it was done under color of title and without any purpose of ever restoring possession to the vendor and is therefore sufficient to initiate an adverse possession.

5. Under the facts of this case, *held,* that the defendants have maintained an adverse possession for about ten years prior to the commencement of the plaintiff's action, and that the same constituted a bar to the prosecution of plaintiff's action under the provisions of sections 4036 and 4037 of the Revised Statutes.

(Syllabus by the court.)

APPEAL from District Court in and for Nez Perce County. Honorable Edgar C. Steele, Judge.

Bender & Lingenfelter, for Appellant.

Where a warranty deed and the agreement to reconvey were given at the same time upon said date between the same

parties for the same consideration and upon the same land, they constitute a mortgage. (*Kelly v. Leachman*, 3 Idaho, 392, 29 Pac. 849; *Pritchard v. Butler*, 4 Idaho, 518, 43 Pac. 73; *Wilson v. Thompson*, 4 Idaho, 678, 43 Pac. 557.) The authorities are uniform in holding that in those states where the title remains in the mortgagor, a mortgage cannot be converted into a conveyance by the parties canceling and delivering over the conveyance of indebtedness. We cite and quote from the following authorities upon this subject: *O'Dell v. Montrose*, 68 N. Y. 499; *Dupont v. Wertheman*, 10 Cal. 368; *Brown v. Bryan*, 6 Idaho, 1, 51 Pac. 995; *Peugh v. Davis*, 96 U. S. 332, 24 L. ed. 775; *Keller v. Kirby*, 34 Tex. Civ. App. 404, 79 S. W. 82. A national bank cannot acquire title to real property by equitable estoppel in violation of the national banking statute. Nor will a court of equity reform the release of March 28, 1890 (the executory agreement), to conform with the intentions of the parties to specifically enforce it in contravention of the United States statute. (U. S. Rev. Stats., sec. 5137; *Case v. Kelly*, 133 U. S. 21, 10 Sup. Ct. Rep. 216, 33 L. ed. 513; *Dickinson v. Glenney*, 27 Conn. 104; *Thomas v. Railroad Co.*, 101 U. S. 71, 25 L. ed. 950; *M'Cutcheon v. Merz Capsule Co.*, 71 Fed. 795, 19 C. C. A. 108, 31 L. R. A. 415; *St. Louis etc. R. Co. v. Terre Haute etc. R. Co.*, 145 U. S. 393, 12 Sup. Ct. Rep. 953, 36 L. ed. 748; *Union Pac. R. Co. v. Chicago etc. R. Co.*, 163 U. S. 597, 16 Sup. Ct. Rep. 1173, 41 L. ed. 277; *Central Transp. Co. v. Pullman Palace Car Co.*, 139 U. S. 24, 11 Sup. Ct. Rep. 478, 35 L. ed. 55; *Reed v. Johnson*, 27 Wash. 42, 67 Pac. 381, 57 L. R. A. 404.) There must have been knowledge on the part of the plaintiff of the existence of the right of redemption, for there can be no laches in failing to assert rights of which a party is wholly ignorant, and whose existence he had no reason to apprehend. (*Halstead v. Grinnan*, 152 U. S. 416, 14 Sup. Ct. Rep. 641, 38 L. ed. 495; *Ritchie v. Sayers*, 100 Fed. 537; *Godkin v. Cohn*, 80 Fed. 465, 25 C. C. A. 557.) Laches is not a defense in action to redeem a mortgage under the statute which provides that adverse possession alone is a defense.

(Idaho Rev. Stats., sec. 4062; *Murphy v. Crowley,* 140 Cal. 141, 73 Pac. 820; *Goodnow v. Parker,* 112 Cal. 437, 44 Pac. 740; *Kenney v. Parks,* 137 Cal. 527, 70 Pac. 556; *Stewart v. Thompson,* 32 Cal. 263; *City of Oakland v. Carpenter,* 13 Cal. 540; *Hager v. Shindler,* 29 Cal. 48; *Clausen v. Meister,* 93 Cal. 555, 29 Pac. 232; *Brown v. Cloud Co. Bank,* 2 Kan. App. 352, 42 Pac. 593; *Missouri Sav. etc. Co. v. Rice,* 84 Fed. 133, 28 C. C. A. 305; *Hall v. Arnott,* 80 Cal. 348, 22 Pac. 200; *McPherson v. Hayward,* 81 Me. 329, 17 Atl. 164; *Knowlton v. Walker,* 13 Wis. 305; *Chapin v. Wright,* 41 N. J. Eq. 438, 5 Atl. 576; *Cohen v. Mitchell* (Cal.), 9 Pac. 649; *Wardner v. Enslen,* 73 Cal. 291, 14 Pac. 874; *Raynor v. Drew,* 72 Cal. 307, 13 Pac. 866; *Houston v. National etc. Assn.,* 80 Miss. 31, 92 Am. St. Rep. 565, 31 South. 540; *Hill v. Nash,* 73 Miss. 849, 19 South. 710; *Moore v. Dick,* 187 Mass. 207, 72 N. E. 967.) Adverse possession must be in opposition to the title and not under the title pursuant to an agreement. (*Farish v. Coon,* 40 Cal. 33; *Kerns v. Dean,* 77 Cal. 555, 19 Pac. 817; *Kerns v. McKean,* 65 Cal. 411, 4 Pac. 404; Rev. Stats. 1887, sec. 4039; 1 Ency. of Law, p. 978; 4 Rose's Notes on U. S. Supreme Court Reports, p. 505; *Davis v. Devanney,* 7 Idaho, 742, 65 Pac. 500; *Southern Cal. R. Co. v. Slauson* (Cal.), 68 Pac. 108; *Kirk v. Smith,* 9 Wheat. 288, 6 L ed. 92; *Alexander v. Wheeler,* 69 Ala. 341; *Allen v. Smith,* 6 Blackf. 528; *Armstrong v. Risteau.* 5 Md. 256, 59 Am. Dec. 115; *Clarke v. McClure,* 10 Gratt. 310; *Potts v. Coleman,* 67 Ala. 228.) The further authorities cited by the appellant are quoted and considered in the opinion.

James E. Babb, for Respondent.

The findings cover all issues. If they did not, appellant's record not showing any objections below on that score, no objection can be urged now. (*Parker v. Beagle,* 4 Idaho, 453, 40 Pac. 61; *Bunnell & Eno Inv. Co. v. Curtis,* 5 Idaho, 652, 51 Pac. 767; *McCormick v. Friedman,* 7 Idaho, 686, 65 Pac. 441.) The plaintiff in a court of equity cannot have relief based on invalidity of oral contract because it should

have been in writing under statute of frauds. (*Denver etc. R. R. Co. v. Ristine,* 77 Fed. 58, 23 C. C. A. 13; *Jarrett v. Johnston,* 11 Gratt. 327; *Stowell v. Tucker,* 7 Idaho, 312, 62 Pac. 1033; *Grumley v. Webb,* 48 Mo. 562; *Culligan v. Wingerter,* 57 Mo. 241; *Curtis v. Hulbird,* 46 Ill. App. 419; Browne on Statute of Frauds, 5th ed., sec. 123; *Grice v. Woodworth,* 10 Idaho, 459, 80 Pac. 912, 69 L. R. A. 584; *Rowland v. Garman,* 1 J. J. Marsh. (Ky.) 76, 19 Am. Dec. 54; *Nelson v. Forgey,* 4 J. J. Marsh. 569; *Barnes v. Wise,* 3 T. B. Mon. (Ky.) 167.) Payment of purchase price and change of possession will take case out of statute of frauds. (2 Warvelle on Vendors, secs. 767, 768; *Arguello v. Edinger,* 10 Cal. 150; *Willis v. Wozencraft,* 22 Cal. 607; *Calanchini v. Branstetter,* 84 Cal. 249, 24 Pac. 149; *Metropolitan Lumber Co. v. Lake Superior Ship-Canal etc. Co.,* 101 Mich. 577, 60 N. W. 278; 20 Am. & Eng. Ency. of Law, p. 942.) The voluntary surrender or cancellation of a defeasance or an instrument in the nature of one, as a general rule, renders the conveyance absolute and vests complete title in the grantee therein. Such a case is an exception to the maxim, ''Once a mortgage, always a mortgage.'' (*Green v. Butler,* 26 Cal. 595; *West v. Reed,* 55 Ill. 242; *Trull v. Skinner,* 17 Pick. 213; *Vennum v. Babcock,* 13 Iowa, 194; *Marshal v. Stewart,* 17 Ohio, 356; *Seawell v. Hendricks,* 4 Okla. 435, 46 Pac. 557; *Stall v. Jones,* 47 Neb. 706, 66 N. W. 653; *Carpenter v. Carpenter,* 70 Ill. 457; *Shubert v. Stanley,* 52 Ind. 46; *Niggeler v. Maurin,* 34 Minn. 118, 24 N. W. 369; *Bazemore v. Mullins,* 52 Ark. 207, 12 S. W. 474; *Wilson v. Carpenter,* 62 Ind. 495; *McMillan v. Jewett,* 85 Ala. 476, 5 South. 145; *Scanlan v. Scanlan,* 134 Ill. 630, 25 N. E. 652; *Seymore v. Mackay,* 126 Ill. 341, 18 N. E. 552; *Watson v. Edwards,* 105 Cal. 70, 38 Pac. 567; *Bradbury v. Davenport,* 114 Cal. 593, 55 Am. St. Rep. 92, and note, 40 Pac. 1062.) The assent of the person sought to be placed in such fiduciary relation must be shown in order to adjudge such person as a trustee. (*Patton v. Warner,* 11 App. D. C. 149.) Evidence of mere loose declarations of persons holding the legal title and of verbal admission or statements of persons since dead is insufficient to establish

a resulting trust. (*Mayhew v. Burke*, 3 Idaho, 333, 29 Pac. 106; *Curd v. Brown*, 148 Mo. 82, 49 S. W. 990; *Boyd v. Cleghorn*, 94 Va. 780, 27 S. E. 574; *Rice v. Rigley*, 7 Idaho, 115, 61 Pac. 290; *Morrow v. Matthew*, 10 Idaho, 423, 79 Pac. 196; *Deeds v. Stephens*, 10 Idaho, 332, 79 Pac. 77; *Dugan v. O'Donnell,* 68 Fed. 992.) Laches is a bar to an action for redemption. (*Hayward v. Elliott Nat. Bank*, 96 U. S. 611, 24 L. ed. 855; *Twin Lick Oil Co. v. Marbury*, 91 U. S. 587, 23 L. ed. 328; *Carr v. Thompson*, 87 N. Y. 160; *Mills v. Mills*, 115 N. Y. 80, 21 N. E. 714; *McQuiddy v. Ware*, 20 Wall. 14-20, 22 L. ed. 311; *Marsh v. Whitmore*, 21 Wall. 178, 22 L. ed. 482; *Simmons v. Baynard*, 30 Fed. 532; *Hammond v. Hopkins*, 143 U. S. 224, 12 Sup. Ct. Rep. 418, 36 L. ed. 134; *Hoyt v. Latham*, 143 U. S. 563, 12 Sup. Ct. Rep. 568, 36 L. ed. 259; *Joyce v. Growney*, 154 Mo. 253, 55 S. W. 466; *Blackledge v. Blackledge* (Iowa), 91 N. W. 818; *Mantle v. Speculator Min. Co.*, 27 Mont. 473, 71 Pac. 665; *Barr v. New York etc. R. Co.*, 125 N. Y. 263, 26 N. E. 145; *Burling v. Newlands* (Cal.), 39 Pac. 49.) In case of violation of a trust or other fraud the law does not require actual knowledge of all the facts. If the party injured failed or omitted to obtain knowledge when it was obtainable, if knowledge of the circumstances were such as would have reasonably induced an inquiry and effort to obtain such knowledge, it is sufficient to hold the party guilty of laches. (*New Albany v. Burke*, 11 Wall. 96, 107, 20 L. ed. 155; *Bowman v. Waltham*, 1 How. 189, 11 L. ed. 97; *Wood v. Carpenter*, 101 U. S. 837, 25 L. ed. 1081; *Teall v. Slavin*, 40 Fed. 774; *Sedlack v. Sedlack*, 14 Or. 540, 13 Pac. 452; 2 Pomeroy's Equity Jurisprudence, sec. 965; *Whitney v. Fox*, 166 U. S. 637, 17 Sup. Ct. Rep. 713, 41 L. ed. 1145; *Rugan v. Sabin*, 53 Fed. 415, 3 C. C. A. 578; *Parker v. Kuhn*, 21 Neb. 413, 59 Am. Rep. 838, 32 N. W. 74; *Wright v. Davis*, 28 Neb. 479, 26 Am. St. Rep. 347, 44 N. W. 490; *Bruner v. Finley*, 187 Pa. St. 389, 41 Atl. 334; *Chalmer v. Bradley*, 1 Jac. & W. 51; *Curtis v. Lakin*, 94 Fed. 251, 36 C. C. A. 222; *Swift v. Smith*, 79 Fed. 709, 25 C. C. A. 154; *Naddo v. Bardon*, 51 Fed. 493, 2 C. C. A. 335; *Allen v. Allen*, 47 Mich. 74, 10 N. W. 113; *Bland v.*

*Fleeman,* 58 Ark. 84, 23 S. W. 4; *Chapman v. Bank of Cal.,* 97 Cal. 155, 31 Pac. 896; *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360; *McRoberts v. Carneal* (Ky.), 44 S. W. 442; *Farrand v. Land etc. Imp. Co.,* 86 Fed. 393, 30 C. C. A. 128; *Armory v. Armory,* 6 Biss. 174, 1 Fed. Cas. 777; *McCann v. Welch,* 106 Wis. 142, 81 N. W. 996; *Ryan v. Woodin,* 9 Idaho, 525, 75 Pac. 261; *Hopkins v. Stephenson,* 1 J. J. Marsh. 341; *Pickens v. Walker's Heirs,* 3 Dana, 167. Where the property is of a speculative nature, see *Sagadahoc Land Co. v. Ewing,* 65 Fed. 702, 13 C. C. A. 83; *Kinney v. Consolidated Vir. Min. Co.,* 4 Saw. 382, Fed. Cas. No. 7827; *Williams v. Rhodes,* 81 Ill. 571.) To set aside an executor's sale of real estate to pay debts, on the ground that the executor was interested with the purchaser, held laches. (*Norfolk etc. Hosiery Co. v. Arnold,* 49 N. J. Eq. 390, 23 Atl. 514.) In an action to set aside a deed on the ground of fraud, the fraud is discovered, within the meaning of the statute of limitations, when the deed was recorded. (*Francis v. Wallace,* 77 Iowa, 373, 42 N. W. 323; *Leas v. Gerverich,* 77 Iowa, 275, 42 N. W. 194; *Allen v. Wisconsin etc. Ry. Co.,* 90 Iowa, 473, 57 N. W. 1121; *Laird v. Kilbourne,* 70 Iowa, 83, 30 N. W. 9; *Bishop v. Knowles,* 53 Iowa, 268, 5 N. W. 139; *Clark v. Van Loon,* 108 Iowa, 250, 75 Am. St. Rep. 219, 79 N. W. 88; *Cockrell v. Cockrell* (Ky.), 15 S. W. 1119; *Poynter v. Mallory,* 20 Ky. Law. Rep. 284, 45 S. W. 1042; *Vodrie v. Tynan* (Tex. Civ. App.), 57 S. W. 680; *Hecht v. Slaney,* 72 Cal. 363, 14 Pac. 89; *Shelby County v. Brag,* 135 Mo. 291, 36 S. W. 600.) Plaintiff is not entitled to any relief on the ground of *ultra vires;* the sovereign alone can object. (*National Bank v. Matthew,* 98 U. S. 628, 25 L. ed. 188; *National Bank v. Whitney,* 103 U. S. 99, 26 L. ed. 443; *Swope v. Leffingwell,* 105 U. S. 3, 26 L. ed. 939. To the same effect, see *Savings etc. Co. v. Bear Valley Irr. Co.,* 112 Fed. 701; *Sanders v. Thornton,* 97 Fed. 863, 38 C. C. A. 508.) It is valid until assailed in a direct proceeding instituted for that purpose. (*National Bank v. Matthews,* 98 U. S. 621, 25 L. ed. 188; *National Bank v. Whitney,* 103 U. S. 99, 26 L. ed. 443; *Reynolds v. Crawfordsville Bank,* 112 U. S. 405, 5 Sup. Ct. Rep. 213, 28 L.

ed. 733; *Cowell v. Springs Co.,* 100 U. S. 55, 25 L. ed. 547; *Hamsher v. Hamsher,* 132 Ill. 273, 23 N. E. 1123, 8 L. R. A. 556; *Herionimus v. Sweeney,* 83 Md. 160, 55 Am. St. Rep. 333, 34 Atl. 823, 33 L. R. A. 99; *Hanson v. Little Sisters of the Poor,* 79 Md. 441, 32 Atl. 1052, 32 L. R. A. 293; *In re Stickney's Will,* 85 Md. 107, 60 Am. St. Rep. 308, 35 L. R. A. 693, 36 Atl. 654.) The statute of limitations and the doctrine of laches operate as against the plaintiff in this action, notwithstanding she is a married woman. (*Broderick's Will,* 21 Wall. 503, 22 L. ed. 599; *Gibson v. Herriott,* 55 Ark. 85, 17 S. W. 589; *Grice v. Woodworth,* 10 Idaho, 459, 109 Am. St. Rep. 214, 80 Pac. 912, 69 L. R. A. 584.) The action is barred by the statute of limitations. (*Webber v. Clarke,* 74 Cal. 11, 15 Pac. 431; *Hicks v. Coleman,* 25 Cal. 122, 85 Am. Dec. 103; *Hoag v. Pierce,* 28 Cal. 191; *McKee v. Greene,* 31 Cal. 420; *Ayres v. Bensley,* 32 Cal. 631; *Russell v. Harris,* 38 Cal. 426, 99 Am. Dec. 421; *Donohue v. Gallavan,* 43 Cal. 573; *Spect v. Hagar,* 65 Cal. 443, 4 Pac. 419; *Packard v. Moss,* 68 Cal. 127, 8 Pac. 818; *Jones v. Gillis,* 45 Cal. 542, 543; *Gregory v. Haynes,* 13 Cal. 595; *San Francisco etc. Co. v. Calderwood,* 31 Cal. 589, 91 Am. Dec. 542; *Goodwin v. McCabe,* 75 Cal. 584, 17 Pac. 706; *Dice v. Brown,* 98 Iowa, 297, 67 N. W. 253; *DeFrieze v. Quint,* 94 Cal. 653, 28 Am. St. Rep. 151, 30 Pac. 1, and note.)

### STATEMENT OF FACTS.

The record brings to this court the second amended complaint of the plaintiff, and the cause of action therein stated is one to have a deed absolute on its face declared a mortgage, and praying for a decree permitting the plaintiff to redeem the lands and premises covered by such conveyance. The tract of land conveyed is one hundred and sixty acres, which was at that time adjoining the city of Lewiston and is now included within the corporate limits thereof. A detailed history of the facts to be considered in the determination of this appeal is set out in the court's findings. Findings numbered 8 and 9 are as follows:

## "VIII.

"That on the twenty-seventh day of July, 1888, the said Mary McQueen executed and delivered to William F. Kettenbach, Sr., a mortgage, bearing date on that day, wherein and whereby she mortgaged to said William F. Kettenbach, Sr., the real property described in the said second amended complaint in this action, to secure the payment of the principal sum of $1,250 and interest; that said mortgage was recorded July 28, 1888, in the recorder's office of Nez Perce county, state of Idaho, in volume 55 of Mortgages, at page 103; that the indebtedness which said mortgage secured was evidenced by a promissory note of said Mary McQueen, payable to said William F. Kettenbach, Sr., or order, and the said promissory note was thereafter, by the said William F. Kettenbach, Sr., for value, assigned and delivered to the defendant, the Lewiston National Bank, and the said bank was the owner and holder of said promissory note and said mortgage, on the eighteenth day of October, 1889, and no part of the same had then been paid.

## "IX.

"That on the eighteenth day of October, 1889, the said Mary McQueen executed and delivered to said bank a warranty deed, wherein and whereby she conveyed and warranted to said Lewiston National Bank the real property described in the said complaint in this action; that the said deed was made in consideration of the sum of $1,486.75, that being the amount due on that date upon said promissory note secured by mortgage as aforesaid, and for the consideration that the bank would execute with the said Mary McQueen a written agreement hereinafter mentioned, for reconveyance of said property to said Mary McQueen; that the said deed was acknowledged by said Mary McQueen, and her acknowledgment thereto certified so as to entitle the same to be recorded, and the same was recorded October 18, 1889, in the recorder's office of Nez Perce county, in book 54 of Deeds, at page 535; that on the execution and delivery of said deed by the said Mary McQueen to the said bank, the said bank received the

same in full satisfaction and discharge of the indebtedness theretofore owing by the said Mary McQueen to the said bank, and said bank thereupon surrendered and delivered the said note of the said Mary McQueen to her, and took no other note in the place thereof, and caused an entry to be made in its registry of said note that the same had been paid, and caused said real estate encumbered by the said mortgage to be registered in its books as real estate, and stated therein that the same was acquired October 18, 1889; that on the said eighteenth day of October, 1889, the said Lewiston National Bank executed with the said Mary McQueen a certain instrument in writing, wherein and whereby the said bank promised and agreed to convey the said real estate to the said Mary McQueen, on the payment, by June 18, 1890, by her, of $1,468.75, with interest thereon from October 18, 1889, until paid at the rate of one and one-fourth per cent per month, and all taxes and assessments of whatsoever nature which were or might become due upon the said real estate; and that she, while not in default of such payment, might have possession of the lands, and she, the said Mary McQueen, in and by said written agreement, promised and agreed to pay the said sum and interest on the eighteenth day of June, 1890, and the taxes and assessments as aforesaid, and the said last-mentioned instrument was duly acknowledged by the parties thereto, and their acknowledgments were duly certified thereon, so as to entitle the same to be recorded, and it was thereafter delivered to the said Mary McQueen, and was thereupon, at her request, filed for record and recorded in the recorder's office of Nez Perce county, state of Idaho, on the eighteenth day of October, 1889; that it was the agreed and expressed purpose of the parties to the said last-mentioned deed and contract, to place the title to the real estate therein described, in the said bank in such a way as to save the necessity of a foreclosure suit for the purpose of vesting the title in said bank, in case Mary McQueen should not make the payments stipulated in said contract; that the consideration expressed in said deed, coupled with the privilege given by the said bank to the said Mary McQueen in the said contract, represented at

that date the reasonable value of the real estate therein described; that thereafter and on the fourteenth day of March, 1890, the said Mary McQueen executed what is commonly known as a bond for a deed, wherein and whereby she obligated herself unto said William F. Kettenbach, Sr., to make, execute and deliver unto him a good and sufficient conveyance with the usual covenants of warranty of the land described in the said mortgage and said warranty deed dated October 18, 1889, in consideration of the sum of $3,300. At the time of the execution of said bond for deed it was agreed and understood by the parties that the consideration of $3,300 therein named consisted of the amount specified in the bond for deed aforesaid, dated October 18, 1889, with interest thereon until the time of the payment of said $3,300, less taxes on the property described in said bond for deed which the bank had paid since the 18th of October, 1889, and the balance of said $3,300, whatever it should be, to be paid in cash, and that the said Mary McQueen should execute and deliver her deed as called for in said bond for deed dated March 14, 1890, on payment to her in cash of the balance of the sum of $3,300, over and above the amount named in said bond for deed, dated October 18, 1889, with interest, and less the taxes which the bank had paid; that said bond for deed dated March 14, 1890, was secured in the interest of the Lewiston National Bank for the purpose of procuring a release of Mary McQueen's right to purchase the said land under the bond for deed dated March 18, 1889; that said William F. Kettenbach, Sr., indorsed on the back of said bond for deed, dated March 14, 1890, the following instructions to Frank W. Kettenbach, to wit: 'The bank has a deed, just canceled the old bond that will make it all right.' That on or about the fourteenth day of March, 1890, and prior to the conveyance hereinafter mentioned, from the Lewiston National Bank to C. J. Smith, the said bank agreed to sell and convey the real estate described in said deed of October 18, 1889, and other real estate to William F. Kettenbach, Sr., for a consideration which was to equal the amount that the said lands had cost the said bank; that thereafter and prior to the time the said Lewiston Na-

tional Bank conveyed the said land to the said William F. Kettenbach, Sr., pursuant to the said agreement of purchase last mentioned, the said William F. Kettenbach, Sr., made sale of the said lands and other lands to the defendant C. J. Smith, and the transactions were closed at the request of William F. Kettenbach, Sr., by a conveyance from the said Lewiston National Bank direct to the said C. J. Smith, without any conveyance having been made by the said bank to the said William F. Kettenbach, Sr.; that said conveyance to said defendant, C. J. Smith, by the Lewiston National Bank bore date of March 24, 1890, and was executed by the said bank by said William F. Kettenbach, Sr., its cashier, at Portland, in the state of Oregon, and was forwarded by the said William F. Kettenbach, Sr., to the Lewiston National Bank at Lewiston, Idaho, where the same was delivered by the said bank by filing the same for record in the recorder's office of Nez Perce county, state of Idaho, on April 3, 1890, when the same was duly recorded in said recorder's office in a volume kept therein for the recording of deeds; that on the twenty-ninth day of March and the first day of April, 1890, the said Mary Mc-Queen was released by said bank from all liability, if any, to it and was paid pursuant to said bond for a deed, dated March 14, 1890, the difference between the principal sum named in said bond for deed dated October 18, 1889, and interest thereon at one and one-fourth per cent per month from that date until the dates of such payment, less the taxes the bank had paid on said lands, and the sum of $3,300, which difference amounted to about the sum of $1,712.05, which was paid to her in cash, and in consideration thereof she delivered to the said Lewiston National Bank the said bond for deed dated October 18, 1889, with the following indorsement written and signed thereon by her, and sworn to by her before the probate judge of said Nez Perce county, to wit: 'For value received, I hereby release the within obligation, and direct that the county recorder of Nez Perce county release the same on the records. Mary McQueen. Territory of Idaho,. County of Nez Perce, ss. Mary McQueen, being first duly sworn, deposes and says, that she is a party to the within agreement, and that

the above release was made for the purpose therein mentioned. Mary McQueen. Subscribed and sworn to before me this twenty-sixth day of March, 1890. W. M. Rice, Probate Judge.' That thereupon the said bond for deed last mentioned, together with the indorsement of release and verification thereof as aforesaid, was filed for record in the recorder's office of Nez Perce county, state of Idaho, on the twenty-ninth day of March, 1890, and the said indorsement of release and affidavit were recorded in book 'B' of Miscellaneous Records in said office, at page 15, on the margin of the original record of said contract; that said Mary McQueen received and was paid the full consideration called for in said bond for deed, dated March 14, 1890, and the consideration so received by her for the real estate therein described represented the full value of the said lands at that time, and the full market value thereof; that it was the intention of the said Mary McQueen at the time she indorsed said release on said bond for deed of October 18, 1889, and swore to the same before the probate judge as aforesaid and delivered the same, to cause the absolute title to the real estate described in said bond for deed to be vested in the Lewiston National Bank, free and clear of any title, claim, interest or demand, on her part, and the said bank and the said William F. Kettenbach, Sr., believed that such was the effect of the transaction, and the said Mary McQueen believed she had caused the said lands to be conveyed absolutely to the said bank; that during the month of March, 1890, said William F. Kettenbach, Sr., was the cashier of said bank, and the defendant, Frank W. Kettenbach, was the assistant cashier of said bank, and in the transactions concerning the said lands the said Frank W. Kettenbach represented the said bank and the said William F. Kettenbach, Sr.; that said deed to C. J. Smith was a warranty deed and was made to him in terms absolute upon its face but in fact to be held by him in trust for the use and benefit of himself and William F. Kettenbach, Sr., Jonathan Bourne, Jr., S. L. Darrin, C. E. S. Wood, K. A. G. McKinzie, and others who had contributed to the payment of the purchase

price of said lands which was paid as the consideration of the deed that was made to said C. J. Smith; that the defendant, Frank W. Kettenbach, and C. J. Smith were not, nor were either of them, members of the association or syndicate, or one of the persons for whose use said C. J. Smith held the title to said lands when he acquired the same in 1890.''

The court further finds: ''That very soon after the twenty-ninth day of March, 1890, and pursuant to the purchase of said lands made from the said Mary McQueen, and payment therefor made her as aforesaid, the said C. J. Smith, with her knowledge and consent, took possession of said lands, and the said C. J. Smith has thence hitherto held the sole, notorious, actual, adverse, exclusive, peaceable and hostile possession of said lands, and paid all taxes of every nature which have been levied or assessed thereon, before the delinquency thereof, and changed the nature of the improvements on said lands, removed fences surrounding the same therefrom, and placed other structures thereon, and since on or about November, 1893, leased the said lands to J. D. C. Thiessen, who occupied and possessed the same under such lease from time to time until the commencement of this action, with the knowledge and acquiescence of the said Mary McQueen at all times until her death, and the knowledge and acquiescence of the plaintiff in this action; that the said J. D. C. Thiessen at all of the said times used said lands for pasturage, keeping thereon many thousand head of sheep, shearing them and feeding them, and erecting thereon corrals, feeding troughs, sheds for the keeping of feed, and in which were stored many tons of wool and feed at different seasons of the year.''

The court also finds that the total sum paid to Mary McQueen for this tract of land was the full and fair value of the property at the time of the transaction.

The appellant, Mary A. Fountain, is the sole surviving heir of Mary McQueen. Judgment was rendered and entered in favor of the defendants and against the plaintiff. Plaintiff appealed from the judgment and from an order denying her motion for a new trial. Affirmed.

AILSHIE, J.   (After making the foregoing statement.)—
After an extended and laborious examination of the record,
three hundred and fifty pages of briefs and scores of author-
ities, we are convinced that, however the other questions
raised might be resolved, still the appellant could not re-
cover on account of the bar of the statute of limitations.   It
is quite clearly established that William F. Kettenbach, Sr.,
did not at any time during this transaction occupy or as-
sume a fiduciary relation toward Mary McQueen.   The deal-
ings and business transactions which took place between them
were at arms-length, in the ordinary course of dealing in
business transactions of the character involved, and no spe-
cial, peculiar or extraordinary degree of trust or confidence
appears to have been reposed in Kettenbach by Mary Mc-
Queen.   She was a woman of ripe years, large experience,
wide observation and more than average business capacity
and intelligence.   All of her contracts and agreements with
Kettenbach and the bank were reduced to writing and placed
of record, and it clearly appears that she was dealt with
fairly and was at the time satisfied with the outcome of the
transaction.   The evidence abundantly supports the court's
finding that no trust or fiduciary relation existed between
Kettenbach and Mary McQueen.   In such a case, the find-
ing of the trial court would not be disturbed unless it
amounted to a substantial departure from the facts clearly
established by the evidence.   (*Morrow v. Mathews,* 10 Idaho,
423, 79 Pac. 201; *Stewart v. Hauser* (majority and dissent-
ing opinions), 9 Idaho, 53, 72 Pac. 719; *Mayhew v. Burke,*
3 Idaho, 333, 29 Pac. 106; *Deeds v. Stephens,* 10 Idaho, 332,
79 Pac. 79.)   Counsel for appellant cite and quote from
*Smitz v. Leopold,* 51 Minn. 455, 53 N. W. 719; *King v. Rem-
ington,* 36 Minn. 15, 29 N. W. 352; *Kirby v. Lakeshore R.
R. Co.,* 120 U. S. 136, 7 Sup. Ct. Rep. 430, 30 L. ed. 569; *Lant
v. Manley,* 75 Fed. 635, 21 C. C. A. 457, in support of the
contention that a trust and fiduciary relation existed between
Kettenbach and Mary McQueen.   We think these authorities
correctly state the principle of law, but as we read the rec-

ord before us, the facts of this case do not bring it within the principle announced by these authorities.

Passing now to a consideration of the bar of the statute, we find that the lands over which this litigation is pending were unoccupied, semi-arid lands adjoining the city of Lewiston. The lands were in this condition on March 28, 1890, when Mary McQueen indorsed her release on the agreement of October 18, 1889. By the agreement of October 18, 1889, it was provided ''that the party of the second part (Mary McQueen) is to have immediate possession of the said premises.'' This seems to have been a recognition at the time and among the parties thereto of the bank's right of possession in the absence of this stipulation. No further specific acts of control or ownership, other than payments of taxes, appear to have been exercised by either party until 1893. In the latter year C. J. Smith, the purchaser from Kettenbach and the bank, let this land along with a large tract of adjoining lands to J. D. C. Thiessen. Thiessen used and occupied the land from that time till the ·trial of the cause for a sheep camp and grazing purposes. He occupied and used the land during the winter and spring months each year, and kept large quantities of wool and feed for his sheep stored there. Mary McQueen and also the plaintiff lived near the land and had actual notice that it was being occupied and used, and not only this, but Thiessen caused all other stock to be excluded from and kept off of the premises. This occupation and possession continued for ten years undisturbed, unquestioned, uninterrupted and exclusive. The appellant does not controvert the fact that respondents were during this period of time in possession of the premises. Appellant does argue with great earnestness that the possession was not adverse, but was, on the other hand, subordinate to and agreeable with the title and possession of Mary McQueen. It is contended that respondents could not claim title through and by virtue of the transactions with and transfer from the grantor and at the same time hold possession thereunder adversely to the title and interest of such grantor. Upon this contention the whole question rests.

In support of the contention that respondent's possession was agreeable and pursuant to the title and possession of Mary McQueen, counsel cite *Farish v. Coon,* 40 Cal. 33; *Kerns v. McKean,* 65 Cal. 411, 4 Pac. 404; *Kerns v. Dean,* 77 Cal. 555, 19 Pac. 817; *Southern Cal. Ry. Co. v. Slauson* (Cal.), 68 Pac. 108; *Davis v. Davanney,* 7 Idaho, 742, 65 Pac. 500; *Kirk v. Smith,* 9 Wheat. 288, 6 L. ed. 92; *Alexander v. Wheeler,* 69 Ala. 341; *Allen v. Smith,* 6 Blackf. 528; *Armstrong v. Risteau,* 5 Md. 279, 59 Am. Dec. 115; *Clarke v. McClure,* 10 Gratt. 310; *Potts v. Coleman,* 67 Ala. 228; 4 Rose's Notes on U. S. Supreme Court Reports, p. 505.

In *Farish v. Coon* the party claiming under adverse possession had located school land warrants on tide lands which belonged to the state of California. Under the statute, however, school land warrants could only be located on land belonging to the United States, and it was held that a location on any other lands was null and void as against the true owner, and that it was impossible for the locator to acquire adverse possession, for the reason that he would be under the necessity of initiating and maintaining such possession by an act or acts of trespass. It was also held in that case that such a location did not amount to a color of title. In *Kearns v. McKean,* "by the terms of a written contract for the sale of land A. (from whom plaintiff claimed) was authorized, on default in the payment of principal or interest by B. (under whom defendant claimed), to declare the contract forfeited and ended, by depositing a written notice to that effect in the county recorder's office, and immediately thereupon he should be at liberty and have the right to re-enter into free and full possession of the premises, and be restored to his former estate therein; and, said default occurring, A. did file the notice as allowed by the agreement," and it was held that A. thereby became entitled to the right of possession of the land and the recovery thereof, and that B., while holding under such executory contract, was not in adverse possession of the premises.

*Kerns v. Dean* involves the same state of facts passed upon in *Kerns v. McKean,* and the court again said: "Defendant

having entered into possession under contract with the vendor, his holding cannot be adverse unless its hostility has been manifested by unequivocal acts brought expressly, or by legal implication, to the vendor's knowledge.''

In *Southern California R. Co. v. Slauson,* both the facts and conclusion of the court are sufficiently stated in the third paragraph of the syllabus to give the view of the court upon the possession or a diverse possession as there discussed. It is said: ''A railroad company and a land owner agreed that, if the former would lay its tracks over the land, and put in a station, the owner would make a deed of the right of way; and thereafter the road was built and operated, but no station was built, nor did trains stop on the land. Held that, the railroad having gone into possession under permission and in consonance with the owner's title, which it was not to have until the performance of conditions which had not been performed, the possession of the railroad was not adverse to the owner.''

In *Davis v. Davanney,* the claim of adverse possession was predicated upon a possession of some six years held under a contract to purchase the premises which consisted of a dam and irrigation ditch and land lying under the ditch. This court held in that case that a title by adverse possession or prescription could not be obtained by permissive use and occupation.

An examination of the other cases cited by appellant discloses that the same principle runs through those cases that has been uniformly maintained in the cases just reviewed. The principle upheld in all these cases, and I take it to be a well-established principle of law, is that wherever the claimant enters into possession under an agreement or contract, whereby in any event or upon the happening of any contingency he may be under the duty or necessity of restoring possession to the grantor or true owner of the premises, then and in that case his possession is the possession of his grantor or the true owner, and cannot be considered as adverse to the possession of him under and from whom he received his possession.

. The citation from Rose's Notes is an extract from *Zeller's Lessee v. Eckert*, 4 How. ·(U. S.) 289, 11 L. ed. 979, where it is said: "When one enters in privity with the owner, the statute does not begin to run until there is a clear, positive, open disavowal of his title brought home to his knowledge." This is undoubtedly a correct statement of the law, but there seems to have been more or less confusion among the courts as to just when a person enters or holds in privity with a · grantor or adversely to him. It is clear, however, upon principle, that one who purchases a tract of land and pays the purchase price and enters into the possession thereof, believing he has title, whether he receives a good deed of conveyance, an imperfect one, or no deed at all, nevertheless enters into a possession adversely to the vendor and all the rest of the world, and while the entry is made with the permission of the owner it is from that moment adverse to him, and an adverse and hostile possession is the real intent of the party to such a contract. A phase of this character of entry and possession is considered in *Merryman v. Bourne,* 9 Wall. 592, 19 L. ed. 683; *Bybee v. Oregon etc. R. Co.,* 139 U. S. 663,.11 Sup. Ct. Rep. 641, 35 L. ed. 305; *Oregon Short Line Ry. Co. v. Quigley,* 10 Idaho, 770, 80 Pac. 401.

The case at bar differs somewhat in its facts and circumstances from any of the cases cited. Here whatever a court might hold as to the legal effect of the deed and agreement of October 18, 1889, and the release of March 28, 1890, the fact remains that from and after the latter date all the parties to these transactions understood and believed that both the legal and equitable title to this property had passed from the grantor, Mary McQueen, to the Lewiston National Bank, and they thereafter dealt with reference to the property · on that theory. The full purchase price as agreed upon was paid by the bank and received by the vendor, and the bank and its successor received and maintained the peaceable, open and uninterrupted possession continuously thereafter until the commencement of this action. This possession was surrendered by the vendor and taken up by the vendee with the knowledge that the full purchase price had been paid

and under the belief that a good title had passed.    Under this state of facts is the subsequent possession of the vendee adverse to the vendor?    It must be admitted as settled law that the possession of a mortgagee acquired by reason of being mortgagee is the possession of the mortgagor and cannot become adverse to him.    (1 Cyc. 1071, and authorities cited.)

It has also been quite generally held that an entry under color of title is sufficient on which to predicate adverse possession.    (1 Cyc. 1082-1085, and authorities cited.)

The question here, then, is reduced to a somewhat simpler form, viz.: Did the bank or its successor in interest enter and hold possession as mortgagee or as purchaser with title or under color of title?    There is no doubt but that all the parties thought the bank was taking possession as purchaser with title.    If, then, what they supposed was title should prove to be only color of title, with reason, and not without authority, we must say the possession so taken and maintained was adverse and hostile to the appellant and her ancestor, Mary McQueen.    The United States circuit court of appeals for the eighth circuit discussed this identical principle in *Schlawig v. Purslow,* 59 Fed. 848, 8 C. C. A. 315, a case where some of the facts were very similar to the case at bar, and in the opinion by Judge Thayer, it is said: "It follows from this view of the case that when Schlawig and wife surrendered the premises to Purslow about December 1, 1878, it was understood by both parties that he went into possession under a claim of title as owner of the fee, and not merely as an encumbrancer or mortgagee.    All of Purslow's subsequent acts, as well as the conduct of his grantees, are consistent with this view, and wholly inconsistent with the theory that he merely took possession as mortgagee under an unsatisfied mortgage. . . . . . It is insisted, however, if the conveyance of December 1, 1877, was in fact and in legal effect a mortgage; that, by taking possession under the same, Purslow became subject to all of the liabilities and disabilities of a mortgagee in possession, and that neither he nor those claiming under him could assume a different relation with respect to the mortgaged premises.    In other words,

it is broadly contended that the possession taken by the gran-
tee under the conveyance of December 1, 1877, could not
ripen into a title under the statute of limitations, because,
that instrument being merely a mortgage, such possession was
not adverse to the mortgagor. We do not dispute the gen-
eral proposition that, where one takes possession of lands
under a written instrument, the nature of that possession
is ordinarily determined by the character of the instrument;
nor the further proposition that possession by a mortgagee
of the mortgaged premises is usually not adverse, but con-
sistent with the rights of the mortgagor. . . . . These con-
cessions, however, are of no benefit to the appellant on the
state of facts disclosed by the present record. The distin-
guishing feature of this case is, that the parties did not re-
gard the conveyance of December 1, 1877, as a mortgage,
and Purslow did not enter into possession as mortgagee, but
as the rightful owner of the fee, of which fact Schlawig must
have been well aware. It is doubtful, to say the least,
whether, from the face of that conveyance, it should be con-
strued as a mortgage, or as a deed which secured the grantor
the right to repurchase the land at a fixed price within a
specified time. That the parties did not intend it to operate
as a mortgage is made manifest, we think, by the oral testi-
mony, by the circumstances which attended its execution,
and by the subsequent conduct of both of the parties thereto.
Under the conveyance, Purslow took possession on December
1, 1878, and for more than ten years thereafter he and his
grantees exercised a dominion and control over the prop-
erty which would have convinced anyone who was not will-
fully unconscious of the significance of their acts that they
claimed to be the rightful owners of the property, and that
they were holding it discharged from the lien of the alleged
mortgage. In view of these facts, we are constrained to de-
cide that the plea of the statute of limitations was fully sus-
tained by the proof, and that the bill was properly dismissed
on that ground. In our judgment the record discloses more
than ten years' adverse possession of the premises in con-
troversy under an open, notorious, and continuous claim of

ownership, which is sufficient, under the Iowa statute, to bar the present suit." (1 Cyc. 1094.)

Counsel for appellant call our attention to sections 4062 and 4039 of the Revised Statutes, and insist that those provisions of the statute support the contention that there could be no adverse possession by the defendants in this case. The sections cited are as follows:

"Sec. 4062. An action to redeem a mortgage of real property, with or without an account of rents and profits, may be brought by the mortgagor of those claiming under him, against the mortgagee in possession, or those claiming under him, unless he or they have continuously maintained an adverse possession of the mortgaged premises for five years after breach of some condition of the mortgage."

"Sec. 4039. In every action for the recovery of real property, or the possession thereof, a person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by another person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title, for five years before the commencement of the action."

The provisions of these sections applicable to appellant's contention amount to this: That the mortgagee as such cannot initiate an adverse possession until after breach of some condition of the mortgage, and that a person seeking to redeem must commence his action before the full period of five years' adverse possession is completed. Under section 4039, a person seeking the recovery of real property who establishes his legal title thereto may thereupon rest on the presumption which the law raises that he who holds the legal title has been during the same time in the possession of the premises, either in person or through his tenant or agent. What we have said above is, we think, in strict accord and harmony with these provisions of the statute.

The defendants upon their trial by legal and competent evidence overcame the presumption of law which section 4039 gives to a plaintiff in such case. The foregoing sections must

also be read in the light of and in harmony with the provisions of sections 4036 and 4037, which are as follows:

"Sec. 4036.    No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seised or possessed of the property in question within five years before the commencement of the action; and this section includes possessory rights to lands and mining claims.

"Sec. 4037.    No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual unless it appears that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor of such person was seised or possessed of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted or defense made."

Plaintiff's cause of action was clearly and undoubtedly barred by the provisions of the two latter sections.    The bank and its successors had been in the actual, exclusive, open and adverse possession of the premises for a period of about ten years immediately preceding the commencement of this action, and this possession, the nature thereof and the claim of right under which it was initiated and maintained was within the actual, personal knowledge of the plaintiff and her ancestor, Mary McQueen.    This action had therefore been barred for a period of about five years at the time it was instituted.    (*Ryan v. Woodin*, 9 Idaho, 525, 75 Pac. 261.)    The conclusion we have reached as to the application of the bar of the statute of limitation makes it wholly unnecessary and unimportant for us to consider the other questions raised in the case, and especially the question as to whether or not the transactions narrated amounted to a transfer of title or remained in law a mortgage only.    In view, however, of the great amount of labor and research that the respective counsel have evidently given this case, and the exhaustive briefs filed on the various branches thereof, we

have examined very carefully into the merits of the case with a view to determining with whom the equities of the case rest. We are of the unanimous opinion that the equities of this case rest with the respondents. The bank evidently paid a good price for the land at the time of the transaction—as much as any other like premises similarly situated could be sold for at the time. The transaction was fair and open, and the grantor was satisfied with the terms of the sale and the price received. After many years of fluctuation in values and uncertainty as to the growth of the city, and the possibilities of this land becoming valuable as city property, and large expenditures having been incurred to make the property salable, it would be both inequitable and unjust at this late date after all the parties to the transactions and all the witnesses but one are dead, to enforce a redemption of the property. The judgment is affirmed with costs in favor of the respondents.

Stockslager, C. J., and Sullivan, J., concur.