278 P.2d 188

Lou OBERMEYER and Milbrey Obermeyer, husband and wife, Plaintiffs-Appellants,

v.

Homer IDOHL and Rena Idohl, husband and wife, Defendants-Respondents.

No. 8140.

Supreme Court of Idaho.

Dec. 22, 1954.

Louis H. Cosho, Boise, for appellants.

Karl Paine and J. F. Cromwell, Boise, for respondents.

GIVENS, Justice.

April 10, 1932 the Grimes Pass Power Company was and, for some time prior thereto, had been in possession and the unquestioned owner of certain real property which included in the metes and bounds description thereof in the mesne conveyances by which said Company had acquired title thereto, the house and lot in question herein.

On that day the Company's manager executed the following instrument:

"Statement

"Grimes Pass, Idaho
"April 10, 1932

"Sold To:

"Homer Idohl   Grimes Pass   Idaho

"One fenced lot, size 70ft. by 90ft., located in the south east corner of the Grimes Pass Power Co. property at Grimes Pass Idaho. This includes one four room house and woodshed.

"Received payment in full by labor to the amount of $100.00.

"Grimes Pass Power Co.
"By s/ Albert H. Whitten
"Manager"

"State of Idaho, ⎱
"County of Ada, ⎰ ss.

"On this 8th day of December, 1950, before me, a notary public in and for

said County and State, personally appeared Albert H. Whitten, known to me to be the person whose name is subscribed to the foregoing, and acknowledged to me that he executed the same. "In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year first above written.

"s/ Catherine L. Sivey

"Notary Public for Idaho
Residence: Boise, Idaho"

"Dfts. Ex. H.

Respondents immediately entered into and have at all times since then remained in possession thereof, either personally or by renters. Thereafter, successive deeds by metes and bounds descriptions, including and not excluding or excepting the house and lot, were executed by the Grimes Pass Power Company and succeeding grantors and grantees culminating in a quitclaim deed No. 54870, dated June 1, 1948, to appellants and recorded in Book 52 of Deeds, page 346, in the office of the Recorder of Boise County.

Upon refusal of respondents to deliver possession in 1951 to appellants of the disputed westerly portions and the house and lot, they filed suit herein to quiet title thereto July 30, 1953. Judgment for respondents as owners by adverse possession under color of title of said portions and the house and lot, was rendered; Hence, this appeal.

Appellants' assignments of error challenge the accuracy and appositeness of the findings and the sufficiency of the evidence to support them.

Respondents concededly own Lots 5 and 6 (and Lots 7 and 8, except a school house lot, not involved herein) in Section 10, Township 8 North, Range 5 East, B.M. The property claimed by appellants, described by metes and bounds, is in the northeast corner of Lot 5 and the northwest corner of Lot 6, roughly triangular in shape, with the disputed house and lot in the extreme eastern point of this triangular area. The dispute over the western, irregular, joint line arose because respondents and Grimes Pass Power Company, in reconstructing the fence in 1942 purportedly along this line, used trees as posts, which did not in all instances make the line coincide with the surveyed metes and bounds; consequently, the present fence line, hatched on Plaintiff's Exhibit 4, reproduced herewith, intermittently extends into the tracts of the respective parties, as described in the above deeds, the plain line on the Exhibit. The court found this fence line as now constructed was and is the agreed, and hence, true, boundary line and that the defendants have paid the taxes on their portion of the land thereby bounded in Lot 5 since 1942.

The court, in effect, quieted title in appellants to the area, except the disputed house and lot, according to the calls in the deed from Annie Calderwood, widow and heir of Ralph Calderwood, common source of title to both appellants and respondents, and Norman Gratz and his wife, to the Grimes Pass Power Company, dated August 10, 1927, Defendant's Exhibit D, Instrument No. 35083, describing appellants' tract in Lots 5 and 6 as follows—except as the same does not coincide with the present westerly fence:

" * * * tract of land situated in Lots 5 and 6, Section 10, Township 8 North, Range 5 East, B.M.; Beginning at a point marked by a post set in a granite ledge near the South Bank of the South Fork of the Payette River from which the meander corner between fractional Sections 9 and 10, Township 8 North, Rnage 5 East B.M. bears North 89°12' West 1082.2 feet distant, which point is designated Station No. 1, and which point is also marked by a cross on a granite rock in place; thence South 9°00' West 79.0 feet to a point; thence South 80° 59' East 84.3 feet to a point; thence South 41°24' East 20.4 feet to a point; thence South 1°49' East 251.6 feet to a point; thence South 39°21' West 118.6 feet to a point; thence South 68°30' West 141.2 feet to a point; thence South 44°30' West 55.8 feet to a point; thence South 55°15' East 106.2 feet to a point; thence South 88°57' East 151.1 feet to a point; thence North 60°47' East 645.5 feet to a point; thence North 87°15' East 472.3 feet to a point; thence South 71°35' East 132.7 feet to a point; thence North 63°12' West 347.2 feet to a point; thence N 84°00' West 75 feet to a point; thence North 44°55' East 65 feet to a point, being a granite rock marked with a cross and No. 4 and designated as Station No. 4; thence North 60°05' East 72.0 feet to a point; thence North 88°45' West 198.0 feet to a point; thence North 76°00' West 202.0 feet to a point; thence North 79°00' West 131.0 feet to a point; thence North 85°37' West 440.7 feet to a point; thence South 9°00' West 50.0 feet to Station No. 1, the place of beginning, containing 8.730 acres, more or less.

"Also beginning at Station No. 4, as above designated thence Easterly with the meander of the South Bank of the South Fork of the Payette River in Section 10, Township 8 North, Range 5 East, B.M. as follows: South 86°15' East 1.00 chain to a point; thence South 62°30' East 5.0 chains to a point; thence North 79°15' East 5.50 chains to a point; (thence North 79°15' East 5.50 chains to a point) thence South 88°00' East 2.50 chains to a point; thence South 72°00' East 5.40 chains to a point; thence South 82°00' East 7.0 chains to a point; thence North

79°30′ East 4.20 chains to a point; thence North 60°00′ East 6.0 chains to a point; thence South 87°30′ East 2.40 chains to a point; thence South 49°30′ East 2.0 chains to a point; thence South 42°15′ East 6.0 chains to a point; thence North 40°00′ East 12.30 chains to the meander corner between *Section* 10 and 11, Township 8 North, Range 5 East B.M. and conveying a strip of land 3 rods in width lying on the South side of the meander line above described and containing 0.79 acres in Lot 6 and 1.58 acres in Lot 7 and 2.08 acres in Lot 8 of Section 10, Township 8 North, Range 5 East, B.M."

The exact boundary of the disputed house lot is not, as such—so far as we can determine from the record—specifically described. The nearest approach is the statement by respondent Idohl:

"Q. Now, describe that lot. A. It was 90x70 something. I don't remember just exactly what it was, but it was 70 something.

"Q. Was it enclosed at the time you bought it? A. No. It was enclosed on two sides.

"Q. On two sides? A. And he asked me to put a fence up immediately, and I did, * * *."

and Defendant's Exhibit L, prepared by Gordon L. Smith, a mining engineer and manager of the Grimes Pass Power Plant from about 1926 to 1931, as follows:

"September 14, 1953.
"Homer Idahl House.
"A one story frame house, situated in Lot 6, Section 10, T. 8 N. R. 5 E. B.M., the south westerly corner of which bears S. 82°27′ E., 2138.18 ft. from the meander corner on the south bank of the South Fork of the Payette River between fractional sections 9 and 10, T. 8 N. R. 5 E. B.M."

Conceding some conflicts, the court found on ample, supporting evidence, documentary and oral, that under the above instrument of April 10, 1932, respondents immediately went into possession of the disputed lot, together with the fence enclosing same, and the dwelling house, woodshed, unpainted garage, and other improvements thereon, having paid $100 in labor therefor; replaced the old fence with a new one; repaired, remodeled and improved the dwelling house at a cost of approximately $2,100, and had continuously possessed, occupied and used said premises since that time under claim of ownership adverse to appellants and their predecessors in interest and the world, to the date of the commencement of this action; that appellants' predecessors in interest acquiesced in respondents' possession and claim of ownership as to the boundary fence, old and new; that at the time of the execution of the instrument above set forth, Grimes Pass Power Company agreed to deliver to defendants a good and sufficient

deed to the premises, but failed and neglected to do so; that said Company has retained the purchase price of $100 and neither it nor its successors in interest, to and including appellants, have ever refunded or offered to refund the $100 and that respondents have paid all taxes which have been levied upon the house and lot.

Respondents paid the taxes for 1933, 34, 35, 36, 38, 39, 40, 41, 42, 43, 44, 46, 47, 49, 51 and 52, on "house at Grimes Pass" or "house Grimes Pass" and in 1948 and 1950 on "house and lot at Grimes Pass" and in 1937, on "house" with no other description except respondents' address as Grimes Pass.

August 26, 1942 respondents acquired Lots 5, 6, 7 and 8, *less* Tax No. 5 in Section 10, Township 8 North, Range 5 East, B.M., and for the years 1943, 44, 45, 46, 47, 48, 49, 50, 51, and 52, paid the taxes thereon.

The Assessor testified with regard to Tax No. 5, Plaintiff's Exhibit 17 (in the reporter's stamp the number 7 is omitted, so it appears as Defendant's Exhibit 1), and the payment of taxes on the disputed lot, as follows:

"A. Tax No. 5 is a copy of the deed that was given from Calderwood to the Boston-Idaho Power Company, and it comprises 13.38 acres.

"Q. Who is the person that pays Tax No. 5 now, do you know? A. Obermeyers.

"Q. Mrs. McDonald, do you know of your own knowledge from your work in assessing where the buildings are located on Mrs. Obermeyer's property? A. Well, this, the big house—those must be the buildings that were there, aren't they? I can't tell from this map, but there is a large house, and a little west from that there is a road, and there's two houses right on the rim of the River, and then just, probably 50 to 75 feet south of that there is what we have always considered the Idohl house.

"Q. By speaking of the Idohl house, do you assess that house in Idohl's name? A. Yes.

"Q. Has the lot it sets on been assessed? A. No, it hasn't. The house has been assessed on the personal roll, and it has been like that ever since I have been in office.

"Q. Who pays the tax on the land? A. I would presume that the Obermeyers have. This particular house is assessed for just the house.

"Q. There are no assessments made against Mr. Idohl for the land on which the house is situated? A. No."

The discrepancies and inconsistencies between the descriptions and difficulties of harmonizing same, in Tax No. 5, Exhibit 17, which the Assessor said was the description in Instrument No. 11062 from Calderwoods to the Boston & Idaho Gold Dredging Company, Plaintiff's Exhibit 8, and Instrument No. 35083, Defendant's

Exhibit D, the deed from the Calderwoods and Gratzes to Grimes Pass Power Company, referred to in Ex. 8, together with the testimony above by the Assessor as to the payment of taxes, was for the trial court and we cannot say he was not justified in finding with regard to the payment of taxes on the disputed lot as follows:

"IX

"That Tax 5 appearing on the tax receipts introduced into evidence as Defendants' Exhibit G is ambiguous in the following particulars: It appears that said Tax 5 was amended or corrected as originally made, and then further corrected by the correction deed recorded in Book 45 of Deeds, at page 1 aforesaid, but when it was further corrected or by whom and to what extent does not appear therefrom; that if the description of the land covered by said Tax 5 was corrected or intended to be corrected to conform to the description of the land covered and conveyed by said correction deed recorded in Book 45 of Deeds, at page 1, as aforesaid, then and in that case said Tax 5 did not cover the land in dispute situated in said Lot 5 from and after said Tax 5 was 'further corrected'; that for the foregoing reasons said Tax 5 was and is invalid."

"XII

"That the assessor of Boise County carried the assessment of said house and lot on the personal property roll as evidenced by Defendants' Exhibit i, and during all the years from 1932 to 1953, both inclusive, said house and lot was described on the assessment roll as a house at Grimes Pass, with the exception of the years 1948 and 1950, when said house was described as a house and lot at Grimes Pass, and the amount of the assessment was the same when it covered the house and lot as when it covered the house only, namely $400.00; that the description of said house and/or lot as a house and/or lot at Grimes Pass without more was and is so indefinite and uncertain as to render said assessment invalid."

The conclusion and adjudication by the trial court that respondents are the owners and entitled to possession of the disputed house and lot, because of adverse possession thereof under color of title for the prescriptive period as to the sufficiency and effect of their possession, are supported and in accord with Sections 5–204 and 5–207, Idaho Code; Fountain v. Lewiston Nat. Bank, 11 Idaho 451, 83 P. 505; Coe v. Sloan, 16 Idaho 49, 100 P. 354; Boise City v. Wilkinson, 16 Idaho 150, 102 P. 148; Crandall v. Goss, 30 Idaho 661, 167 P. 1025; and the disposition of the payment of taxes by Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066; Stickel v. Carter, 63 Idaho 78, 117 P.2d 477; Mulder v. Stands, 71 Idaho 22,

225 P.2d 463; Calkins v. Kousouros, 72 Idaho 150, 237 P.2d 1053.

The judgment is affirmed. Costs awarded to respondents.

PORTER, C. J., and TAYLOR and KEETON, JJ., concur.