(No. 6976   March 11, 1942)

JOHN F. GRAY, Appellant, v. LULU BELLE FRASER, Administratrix of the Estates of Charles C. Fraser and Mima G. Fraser, deceased, Respondent.

(123 Pac. (2d) 711)

James R. Bothwell for appellant.

Wayne A. Barclay for respondent.

GIVENS, C. J.—Charles C. Fraser and Mima G. Fraser, deceased, were husband and wife. Mrs. Fraser was appellant's sister. Mrs. Mima G. Fraser predeceased her husband August 6, 1937. Charles C. Fraser and respondent, Lulu Belle Fraser, were thereafter married October, 1939. Charles C. Fraser died May 8, 1940.

Appellant purchased Lot 1, Block 102, Jerome Townsite, April 20, 1918, for $400. Appellant mortgaged this property to the Jerome National Bank for a loan of $77.10, November 25, 1924, and deeded the property to his sister May 27, 1925. July 16, 1921, decedents conveyed acreage No. 223, in the City of Jerome, to appellant, he claiming the consideration therefore was wages due him from 1916 to 1918 for work done by him for them on their properties in Jerome County. Appellant conveyed this property by warranty deed to his sister July 23, 1921. Appellant contends the consideration for the transfer by him to his sister of the first piece of property was an advance by her of money to liquidate the mortgage given the Jerome National Bank, and that the consideration for the second deed was $100, which he had borrowed from her about the time of the deed and which he contends he paid back by having paid to his sister $25 a month received by him for employment in the Civilian Conservation Corps from July 16, 1933, to July 10, 1934. He brought this suit against respondent, administratrix of the Fraser estates, to have both deeds declared mortgages and that it be decreed that the second had been paid by such assignment

of his salary in the Civilian Conservation Corps, and for an accounting. The trial court found the deeds conveyed absolute title and were not intended to be mortgages or to stand as security for the repayment of any loans, hence this appeal.

All of appellant's assignments of error are summed up in the eighth: "The judgment is not sustained by the evidence or findings of fact or conclusions of law and each are insufficient to sustain the judgment for the reasons hereinabove assigned." In support of his contention he quotes the following testimony, which we conclude is therefore what he deems most favorable to his position and inclusive:

"Q.   What was the consideration for this deed?

"A.   I didn't understand you Judge.

"Q.   Well the deed which you gave to Mrs. Fraser, what were the circumstances under which that deed was given?

"A.   Was that for the lot?

Judge Bothwell: "Yes, that is for the Lot, Lot 1, Block 102, the one on which the Bank had the mortgage.

"A.   I borrowed $75 from the Bank, I think it was $75. It came due, I didn't have the money to pay for it so I went and saw Gilbert White and I gave him a mortgage on that Lot to take care of the note. Then I wrote to my sister, Mrs. Fraser, and told her if she would take up that mortgage, I would deed the Lot to her until such time as I would be able to pay her back. She agreed to that and done it.

"Q.   That is the purpose for which you deeded this lot to her?

"A.   Yes.

"Q.   Did she give you the money to pay off this mortgage?

"A.   She paid it off herself."

*    *    *    *    *    *    *    *    *

"Q.   Now when did you say it was that you made the deal with Mrs. Mima Fraser to pay this mortgage to the Bank?

"A.   Well it was after Gilbert talked to me about the

Examiner being there and this note having to be taken care of. When I made this mortgage I wrote to Mrs. Fraser and told her what I had done and asked her if she would take care of that mortgage when it was due. She said she would.

"Q. Do you recall when the mortgage came due?

"A. It was six months after I signed, I don't remember when it was.

"Q. Now as a matter of fact, there isn't any date on that mortgage is there?

"A. I don't know.

"Q. And when you offered—withdraw that. When did Mrs. Fraser then pay this mortgage off to the Bank if you know?

"A. Well she paid the Bank when it was due, I don't know just when it was. I think it was the following Spring, probably May or June, something like that.

"Q. And at the time she paid it off, you gave her this deed?

"A. I did.

"Q. And she paid the note before or at the time you gave her the deed then?

"A. She paid the mortgage, yes."

*   *   *   *   *   *   *   *   *

"Q. How did you learn that Mrs. Fraser paid this mortgage off to the Bank?

"A. She told me she did.

"Q. At the time she told you that she did, was that the time that you executed this deed to her?

"A. I believe so."

*   *   *   *   *   *   *   *   *   *

"Q. Now Mr. Gray, what was the circumstances under which this deed was given by you to your sister Mima G. Fraser? * * *

"A. Well it was for $100 I borrowed from Mrs. Fraser.

"Q. And what was the—what was said about reconveying it to you if anything when the $100 was paid? * * *

"A. In the handing it back to me?

Judge BOTHWELL: Yes.

"A. Why she said I could have it back any time I paid back the $100."

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. What date did Mrs. Fraser give you the $100 for which you gave her the deed to the acreage?

"A. I believe that was in about—I don't just remember what year it was in or what the date was. I believe it was around '21 I got that acreage.

"Q. Do you remember the month in 1921 that she gave you this money?

"A. March.

"Q. March in 1921, that's right?

"A. I believe it was in 1921 but I can't recall the month.

"Q. Now how did she pay this, in dollars to you?

"A. How did she pay it to me?

Mr. BARCLAY: "Yes.

"A. I don't think it was in March, I think Mrs. Fraser was East at the time; I think it was in July.

"Q. In other words your testimony is that Mrs. Fraser was not in Jerome at the time you received this $100?

"A. I don't believe she was.

Judge BOTHWELL: "Now he didn't testify that he received it in March, he said he didn't know what month it was.

"Q. Do you recall whether or not you received this money in cash from Mrs. Fraser?

"A. No I didn't if I recall rightly, I wrote Mrs. Fraser for $100 and she borrowed this $100. Mr. Fraser wasn't at home at the time I don't think but she got this money from Mrs. Fred C. Clark. She sent me Mrs. Clark's check, it was made out to Mrs. Fraser and she sent it on to me.

"Q. Mrs. Clark is another sister of yours?

"A. She is.

"Q. Where did you write Mrs. Fraser for this $100?

"A. In Pittsburgh I believe.

"Q. You don't remember the month you received it?

"A. I kind of think it was in July, I don't remember the dates very well."

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q.   * * * Have you ever made a demand on anyone for a reconveyance of either of these parcels to you?

"A.   Oh we talked it over different times but there was just the three of us, it didn't seem to make any difference.  We didn't think of death or anything at the time."

\*       \*       \*       \*       \*       \*       \*       \*       \*

"Q.   After Mrs. Fraser died, did you ask Mr. Fraser to convey this property back to you at anytime?

"A.   We was talking just the year after my sister died, I says: 'What are we going to about that acreage out there Chick?'  He says: 'When I come back in the Fall, we will build a little two or three room house on that acreage, we will get some chickens and a cow and we will have a place to stay in the Winter and you will have a place to stay all the time.'

"Q.   So at that time you treated that place as Mr. Fraser's property?

"A.   Well it was all called the Fraser places, everything was just called Fraser's place, that is all it was.

"Q.   And you never made a demand on Mr. Fraser to reconvey it did you?

"A.   Just as we were talking at that time, he says: 'What difference does it make whose name it is in?'  He says: 'We will build this house on it, it doesn't make any difference.'

\*       \*  ·       \*       \*       \*       \*       \*       \*       \*

"Q.   You never at any time requested or asked him to convey this real estate back to you?

"A.   Only that Spring, he was going east and I told him I would like to have the deed for my acreage and lot, I was going to sell it and then he told me we would build that house out there and we wouldn't have to sell it."

In *Dickens v. Heston*, 53 Ida. 91, 21 Pac. (2d) 905, 90 A. L. R. 944, Justice Budge, then chief justice, with great care and particularity, after an exhaustive review of the authorities, specified the essential circumstances to be determined in solving a question of this kind, that is, whether a deed absolute upon its face is to be considered

a mortgage, thus: (a) existence of debt to be secured, (b) satisfaction or survival of the debt, (c) previous negotiations of parties, (d) inadequacy of price, (e) financial condition of grantor, (f) intention of parties.

To establish a deed to be a mortgage the evidence must be clear, satisfactory, and convincing. (*Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484; *Shaner v. Rathdrum State Bank,* 29 Ida. 576, 161 Pac. 90; *Clinton v. Utah Construction Co.,* 40 Ida. 659, 237 Pac. 427; *Drennan v. Lavender,* 41 Ida. 263, 238 Pac. 532; *Wright v. Rosebaugh,* 46 Ida. 526, at 529, 269 Pac. 98:

"A fee-simple title is presumed to pass by a grant of real property, and, independent of proof, the presumption arises that the instrument is what it purports on its face to be—an absolute conveyance of the land. To justify a trial court in determining that a deed which purports to convey land absolutely in fee simple was intended to be something different, as a mortgage, the authorities are uniform to the point that the evidence must be clear, satisfactory and convincing, and that it must appear to the court beyond reasonable controversy that it was the intention of the parties that the deed should be a mortgage. [citing authorities.] The trial court is the appropriate tribunal to weigh the evidence and determine whether it is convincing and satisfactory within the meaning of the rule. It has been said that in such cases, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review in the appellate court. (*Beckman v. Waters,* 161 Cal. 581, 119 Pac. 922, quoting from *Couts v. Winston,* 153 Cal. 686, 96 Pac. 357, in which many earlier cases are cited.)"

*Parks v. Mulledy,* 49 Ida. 546, 290 Pac. 205, 79 A. L. R. 934; *Investors' Mortgage Security Co. v. Hamilton,* 51 Ida. 113, 4 Pac. (2d) 347; *Hagan v. Clyde,* 60 Ida. 785, 97 Pac. (2d) 400.)

Appellant contends, since no witness directly contradicted his testimony, that under the rule in the case following the only conclusion which may be drawn is in his favor.

"A board, court, or jury must accept as true the positive, uncontradicted testimony of credible witness, unless

inherently improbable or rendered improbable by facts and circumstances (I. C. A., sec. 16-201 to 16-203)." (syllabus 10, *Pierstorff v. Gray's Auto Shop*, 58 Ida. 438, 74 Pac. (2d) 171.)

According to appellant's testimony he overpaid his sister, as to the amount of money he had borrowed from her, on the second piece of land either $125 or $200, and he deeded the second piece of property for $77.10, having paid $400 therefor, which would be indications that the deeds were intended as mortgages.

The rule contended for by appellant, however, requires an examination of the surrounding 'facts and circumstances' in testing the testimony. (*Clinton v. Utah Construction Co., supra.*) As against the above points in appellant's favor and the mere surface of his testimony, and tested by the enumerated indicias in *Dickens v. Heston, supra,* there are these weaknesses and deficiencies in the evidence adduced by appellant which sustain the judgment: first, the lapse of time; second, the indefiniteness as to the payment made by appellant's sister to him, and the amounts which he contends were consideration for the loans, and lack of particularity and definiteness that it was mutually recognized that he owed, after the giving of these deeds, this money to his sister as an acknowledged debt or enforcible obligation; third, the lack of any writing or corroborative testimony in this—no one from the bank was called upon nor was any explanation given as to why some party for the bank did not testify Mrs. Fraser, appellant's sister, paid off the bank's mortgage. Though appellant testified there was a letter from Mrs. Clark, another sister, as to having advanced the money in the first instance for the second transfer, it was never produced or accounted for. It is true appellant testified he gave his sister the money for the payment of the taxes upon this property. The records in the tax collector's office, to the extent there were any, showed that except for one year on one piece and two years on the other the taxes were paid by the Frasers and not by appellant. Appellant never exclusively occupied the land, nor did he make an unequivocal demand upon the Frasers for recognition of his title during their lifetime. His manner of

answering questions might have caused the trial judge, who heard the testimony and saw his demeanor upon the stand and therefore was in a better position than we are to evaluate appellant's credibility, to be skeptical as to his frankness. "In such a case, the finding of the trial court would not be disturbed unless it amounted to a substantial departure from the facts clearly established by the evidence." (*Fountain v. Lewiston National Bank,* 11 Ida. 451, at 465, 83 Pac. 505.)

This whole matter was allowed to remain quiescent from May 27, 1925, until the date this action was brought, November 22, 1940, or some fifteen years, and until both the Frasers were dead.

In view of all the circumstances we cannot say the evidence that these deeds were mortgages was so clear, satisfactory, and convincing that the trial court arbitrarily or capriciously disregarded appellant's testimony (*First Trust & Savings Bank v. Randall,* 59 Ida. 705 at 714, 89 Pac. (2d) 741) or was so unjustified in finding adversely to appellant that we must reverse the judgment. (*Shaner v. Rathdrum State Bank, supra; O'Regan v. Henderson,* 46 Ida. 761, 271 Pac. 423; *Hagan v. Clyde, supra; Jones v. Jones,* 96 Ore. 197, 189 Pac. 896; *Hill v. Daugherty,* (Ida.) 115 Pac. (2d) 759.) " * * * the fact that the testimony in behalf of plaintiff would, if it had been believed by the trial court, demand a different finding will not lead to a reversal of the lower court's decree unless the evidence so preponderates in favor of the plaintiff's contention that the appellate court can say the lower court was not justified in accepting the contention of the defendants as the true facts of the situation." (*Hansen v. Abrams,* 76 Wash. 457, 136 Pac. 678.)

The judgment is therefore affirmed. Costs awarded to respondent.

Budge, Morgan, Holden, and Ailshie, JJ., concur.