CLARKE, APPELLANT, v. CHAMBERLAIN, ET AL., RESPONDENTS.

No. 8979.
Submitted October 13, 1950. Decided December 18, 1950.
225 Pac. (2d) 477.

406

Messrs. Smith, Boone and Rimel, Missoula, for appellant.

Messrs. Taylor and McKenna, Hamilton, for respondent.

Mr. Smith, Mr. Rimel and Mr. Taylor argued the cause orally.

MR. CHIEF JUSTICE ADAIR:

Plaintiff brought this suit to have a warranty deed and a contemporaneously executed contract declared to constitute a mortgage and, from an adverse decree, has appealed.

Frances Victoria Clarke owned certain land in Ravalli county, subject to the lien of a mortgage to the Federal Land Bank of Spokane, dated July 28, 1923.

Installment payments called for by the mortgage and taxes on the property becoming delinquent, the bank, in the spring of 1938, commenced suit to foreclose its mortgage. Summons issued and was duly served upon Mrs. Clarke, defendant in the action. Thereafter an amended complaint was filed and an alias summons was issued and served upon Mrs. Clarke, but she failed to appear or make answer to either the original or the subsequently issued alias summons.

While the suit was pending Mrs. Clarke contacted the bank and its agents and was advised by them that the bank would accept cash in the amount of the past due installments in discharge

of the delinquencies and that upon receipt of such payment would call off its foreclosure suit. Thereupon Mrs. Clarke endeavored to raise the necessary money but was unable to do so until some time in August 1938. In the meantime, to-wit, on July 30, 1938, Mrs. Clarke's default was entered and a decree of foreclosure was rendered ordering the sale of the mortgaged land to satisfy the sum of $5,293.49, adjudged to be due on the bank's note and mortgage.

Upon learning of the action so taken against her in the foreclosure suit Mrs. Clarke filed therein a motion for an order to set aside her default and vacate the decree. While such motion was pending and undetermined, to-wit, on September 6, 1938, Mrs. Clarke, as grantor, made, executed and delivered to Swift H. Chamberlain a warranty deed purporting to convey to him and to his son Robert S. Chamberlain, as grantees, the title in fee to all of the land described in the bank's mortgage, stating therein that the deed is subject to such mortgage.

For the above conveyance, Swift H. Chamberlain paid the sum of $1,500.00 of which amount $1,307.00 went to the Federal Land Bank of Spokane to satisfy the mortgage delinquencies in full and the balance of $193.00 to Mrs. Clarke and he also paid the delinquent taxes on the property in the amount of $664.06.

Also on September 6, 1938, the Chamberlains and Mrs. Clarke entered into a written contract granting Mrs. Clarke the privilege to purchase the land at any time within one year for the sum of $1,500.00 with interest.

On September 9, 1938, the district court granted Mrs. Clarke's motion in the foreclosure suit and made and entered an order setting aside her default, vacating the decree and restoring the bank's note and mortgage to their former standing as valid and outstanding obligations. The Chamberlains entered into possession of the land and at all times since the fall of 1938 have continued in such possession.

By written assignment dated March 25, 1939, and thereafter duly recorded in the office of the county clerk and recorder of

Ravalli county, Mrs. Clarke sold, assigned, transferred and set over unto Ray Vert of San Francisco, California, "all of her right, title, claim and interest in and to that certain agreement made and entered into by and between Swift H. Chamberlain and Robert S. Chamberlain * * * as parties of the first part and Frances Victoria Clarke, * * * as the party of the second part, wherein and whereby the said parties of the first part agreed to sell and convey to the said party of the second part" all of the lands described in the warranty deed to the Chamberlains.

Neither Mrs. Clarke nor her assignee Ray Vert exercised any right under the contract and neither made any payment thereon within the time prescribed therefor or at all and on September 7, 1939, the Chamberlains by written notice directed to Mrs. Clarke and to Vert, notified them that the Chamberlains "have elected to exercise their option to terminate the said agreement, and any interest you, or either of you, may have therein is cancelled."

In the year 1947, both Frances Victoria Clarke and Swift H. Chamberlain died.

On March 1, 1948, the plaintiff George Clarke, as administrator of the estate of Frances Victoria Clarke, deceased, instituted this action against Robert S. Chamberlain individually and as administrator of the estate of Swift H. Chamberlain, deceased, and four other defendants, viz., Ray Vert and wife, the wife of Robert S. Chamberlain and the widow of Swift H. Chamberlain, deceased. The defendants Vert defaulted but the other four defendants made answer to which plaintiff filed a reply.

A trial before the court sitting without a jury resulted in findings of fact, conclusions of law and decree for the answering defendants.

Plaintiff assigns twelve specifications of error. The first four specifications are directed against the decree; the last four are directed against the trial court's conclusions of law while specifications numbered 5 to 8 inclusive urge as error the making of the trial court's findings of fact designated II, IV, VIII and IX.

No error whatever is assigned on the making of the court's findings numbered I, III, V, VI and VII.

The court's findings of fact and conclusions of law read:

"Findings of Fact:

"I. That prior to July 30, 1938, Frances Victoria Clarke was the owner in fee simple of that certain real property described in the pleadings, the descriptions being here omitted, the same constituting one ranch property. This property was subject to a mortgage in favor of the Federal Land Bank of Spokane, and on this date said Bank, because of many defaults following a foreclosure of the mortgage, obtained a decree of foreclosure and sale to secure the then amount due the Bank of $5,293.43. At that time such property was also encumbered by taxes for the four years immediately past in the total amount of $664.06. Had a sale then been made under such foreclosure decree, Mrs. Clarke would have had one year's time in which to redeem from the sale.

"II. At the time of such decree of foreclosure, such ranch property, consisting of about 140 acres, had been rented for some considerable time, and the land was in a rundown condition. The dwelling house, barn and other buildings thereon were likewise out of repair and in bad shape for want of upkeep; and for these reasons, and others appearing in these findings, such entire ranch property did not have a cash value very much in excess of what was due the Land Bank, the taxes and the cost of putting the entire property in shape for proper operations.

"III. That after such foreclosure decree of the Land Bank, Mrs. Clarke moved to vacate the decree, and the Land Bank then agreed to accept a payment of $1,200.00 to reinstate the mortgage and vacate the decree of foreclosure, the Bank insisting that whatever deal Mrs. Clarke made to secure the necessary money, she should protect herself for the one year's time that she would have had to redeem had a foreclosure sale taken place.

"IV. On September 6, 1938, Mrs. Clarke sold and transferred all this property by deed to Swift Chamberlain and Robert

S. Chamberlain for a consideration of $1,500.00, and subject to all encumbrances. At that time the Chamberlains borrowed such $1,500.00 from one Adam Horning, and of such amount they paid to the Land Bank $1,307.00 for vacating their foreclosure decree, and $193.00 direct to Mrs. Clarke. They at the same time, in order to give Mrs. Clarke the same length of time as she would have had in redeeming from the foreclosure sale, executed the contract, Exhibit 1, as a conditional resale contract to her, or as an option to her, to purchase back the property. Nothing can be found in this contract which obligated Mrs. Clarke to pay the Chamberlains such $1,500.00 except that she was to pay such amount 'as the purchase price for said property.' The contract itself provided the remedy to the Chamberlains, and that was that if the $1,500.00 was not paid back to them, with interest, that the contract could be terminated by them and all of Mrs. Clarke's title and interest canceled. This was done by the Chamberlains promptly at the expiration of one year, by the letter to Mrs. Clarke and to the Verts, Defendants' Exhibit 9. In no way was any debt created by Mrs. Clarke to the Chamberlains, and in no way could the Chamberlains have compelled Mrs. Clarke to take this land or brought suit against her on any promise of hers to pay any fixed amount.

"V. In November, 1938, the Chamberlains took possession of all such ranch property and have so been in possession to this day. They put the land in shape, fixed up all of the buildings, dug a very expensive well. They have made all the payments to the Land Bank and paid all the back taxes and the taxes since then. The improvements they put on alone cost them $6,000.00, and they have enjoyed this property as their own to the present time.

"VI. On October 2, 1940, Mrs. Clarke employed a firm of attorneys in Hamilton to bring suit for her to recover possession of four horses, or their value, which were left on that same ranch by her and are mentioned in the contract, Exhibit 1. But no action of any kind was started such as the present one to have

that deed of hers declared a mortgage. This case was tried by the Court on December 12, 1941, and the findings and judgment were in favor of Mrs. Clarke, and she recovered the full value of those horses by judgment, issued execution, and the judgment was later satisfied by the Chamberlains. At the time of this trial Mrs. Clarke lived at the hotel in Hamilton, walked some four blocks to the courthouse and back without any difficulty, seemed to be in very fair physical condition, and very active and alert.

"VII. On or about December 10, 1942, Mrs. Clarke employed J. D. Taylor as her attorney, which resulted in Mr. Taylor writing Swift Chamberlain the letter, copy of which has been received in evidence as Plaintiff's Exhibit 8. At that time the Chamberlains consulted with Mr. Taylor and offered even then to allow Mrs. Clarke to repurchase the land, offered to reinstate her option and to accept from her what they had put into the property in cash and to let her have the ranch. This was communicated to Mrs. Clarke, and she took no action.

"VIII. In February, 1939, Mrs. Clarke executed a deed to the Verts of all of her interest and estate in such property and an assignment to them of the contract Exhibit 1, for which she was to receive from the Verts $500.00 in cash and be given a right to live on the property for the rest of her life. The Verts came up from California and investigated this ranch, but took no action, to repurchase this property or to redeem the property from the Chamberlains. At that time Mrs. Clarke's only right, regarding such property, was the right to exercise her option to repurchase it, and as this was not done by her nor by the Verts, the Verts obtained no right, title or interest to the property from Mrs. Clarke because Mrs. Clarke had none.

"IX. Both the plaintiff and the defendants, in the briefs submitted to this Court, produced authorities at rather great length on the question of whether laches appear in this action, and in this particular this Court makes the further following findings:

412

"(a) The notice of the cancellation of this contract, Exhibit 1, was given on September 7, 1939.

"(b) The Chamberlains borrowed the $1,500.00 to save this farm from foreclosure sale, when they bought the farm. They did not borrow money in order to loan money.

"(c) The Chamberlains have been in possession of this ranch property since November, 1938.

"(d) The payments to the Land Bank on its mortgage and the payment of all taxes past due in 1938 and to date have been made by the Chamberlains.

"(e) Mrs. Clarke's suit against the Chamberlains to recover the horses or their value clearly indicates that she did not consider she then had any interest in the land.

"(f) The Vert transactions with Mrs. Clarke, where she was to get $500.00 and a place to live, clearly indicate that is what she considered her then interest in the property.

"(g) The Chamberlains have expended some $6,000.00 in the improvement of the buildings and this property.

"(h) Mrs. Clarke's son, the present plaintiff, lived in that vicinity all of the time.

"(i) Not until May 21, 1947, was the son appointed the guardian of Mrs. Clarke—not because she was insane, but because she was incompetent to handle her business affairs.

"(j) On December 17, 1947, the plaintiff here was appointed administrator of his deceased mother's estate, but did not file this present action until March 1, 1948.

"(k) On April 5, 1948, the Chamberlains gave a mortgage to the Citizens State Bank of Hamilton to cover previous advances, in the amount of $6,795.35, upon this same ranch property.

"(l) Mrs. Clarke was represented by attorneys in 1940, 1941 and 1942, in business matters relating to the very transactions, or parts of them, with which we are here concerned.

"(m) Mrs. Clarke and Swift Chamberlain both died prior to the time of this trial.

"(n) The value of this ranch property, considering all of the

improvements, and the enhanced values of all property the last few years, of course has increased considerably since 1938, but all due to the expenditures of others than Mrs. Clarke or her representatives.

" (o) If this transaction is held to be a mortgage, then its lien has long since expired. (Sec. 8267, R. C. M.) Should this in any way be held to be a debt from Mrs. Clarke to the Chamberlains, then it became fully due September 6, 1939, more than eight years before this action was started, to-wit, March 1, 1948, and such debt was barred by our Sec. 9029, and any mortgage secured thereby goes with it.

"Laches appear here against the plaintiff for so unreasonable and unexplained a length of time as to make any equitable relief to the plaintiff a rank injustice to the defendants, and also to innocent third parties.

"From the admissions in the pleadings, the stipulation of the parties, the uncontroverted evidence and the foregoing findings, the Court makes the following

"Conclusions of Law:

"I. That the contract, Exhibit 1, and the deed given at the same time, did not constitute a mortgage; that the defendant Robert S. Chamberlain and the decedent Swift Chamberlain have been the owners of that ranch, unaffected by anything held or owned by Mrs. Clarke, since the cancellation of the contract on September 7, 1939.

"II. That the plaintiff here, representing the Estate of Mrs. Clarke, and such Estate, have no right, title or interest of any kind in and to such ranch property; and likewise, Ray Vert and his wife have no claim, right, title or interest in and to the same.

"III. That the defendants are entitled to a judgment dismissing the plaintiff's cause of action without any relief whatsoever, and the defendants are also entitled to their costs and disbursements expended in this action.

"IV. That the defendants are not liable to account to the plaintiff in any way whatsoever as to any rents, issues or profits

of such ranch property since they have been in possession, and there shall be no further proceedings in accounting or otherwise, relating to any and all of such transactions,"

Decree

The decree adjudges: That the warranty deed and contract of September 6, 1938 did not constitute a mortgage; that the Chamberlains have been the owners of the land, unaffected by anything held or owned by Mrs. Clarke since the cancellation of the contract on September 7, 1939; that the estate of Mrs. Clarke and plaintiff as representative of such estate, have no right, title, estate or interest of any kind in or to the described land; that the defendants Ray Vert and wife have no claim, right, title or interest in or to the land; that defendants are not liable to account to plaintiff for any rents, issues or profits of the land; that defendants are entitled to a judgment of dismissal and for their costs and disbursements.

In our opinion the admissions in the pleadings, the stipulation of the parties and substantial evidence received at the trial sustain the findings of fact made which are determinative of the cause and the court's conclusions and its decree are warranted by the law as applied to the material facts found. Compare: Morrison v. Jones, 31 Mont. 154, 77 Pac. 507; L. R. A. 1916B, 226, note; Robitaille v. Boulet, 53 Mont. 66, 161 Pac. 163; Johnson v. Opheim, 67 Mont. 126, 214 Pac. 951; Lewis v. Bowman, 113 Mont. 68, 121 Pac. (2d) 162, and note in 173 A. L. R. 337.

Finding no merit in the specifications assigned, the decree is affirmed.

ASSOCIATE JUSTICES FREEBOURN, ANGSTMAN, METCALF and BOTTOMLY, concur.

Rehearing denied January 3, 1951.