399 P.2d 949

Paul F. CLONTZ and Betty Gean Clontz, husband and wife, Plaintiffs-Appellants,

v.

H. O. FORTNER and Dorothy Fortner, husband and wife, Defendants-Respondents.

No. 9438.

Supreme Court of Idaho.

March 12, 1965.

Racine, Huntley & Olson, Pocatello, for appellants.

Parry, Robertson & Daly, Twin Falls, for respondents.

TAYLOR, Justice.

February 4, 1952, Rolland J. Hawes and wife and John P. Hawes and wife, as vendors, entered into a written contract for the sale of the real property involved, to O. S. Butler, as purchaser. March 15, 1954, the purchaser, O. S. Butler, and wife assigned the contract to the plaintiffs (appellants) herein.

The original purchase price was $90,000. Annual payments of $4,333 of principal, plus interest, were due and payable February 4th of each year. Plaintiffs failed to make the payment due in February, 1957, and were advised by Hawes that, if the payment was not made within sixty days, action would be commenced upon the contract. Plaintiffs thereafter obtained the money necessary to make the payment from one Cecil Brim, and in April, 1957, gave Brim an assignment of their interest in the Hawes-Butler contract.

Thereafter, plaintiffs brought an action against Brim to have the assignment declared a mortgage so that plaintiffs could repay Brim and be revested with their rights under the contract. Judgment in that action, entered pursuant to stipulation, declared the assignment to be a mortgage, and allowed plaintiffs sixty days from the date of judgment, October 10, 1957, to redeem by paying the amount owing to Brim, which amount was determined to be $9,692.-90.

Immediately after the entry of the judgment, plaintiff Paul Clontz listed the property for sale and began contacting prospective buyers in an effort to make a sale. His purpose was to raise the money to pay Brim and to realize some part of his own equity in the property. Among others, Clontz talked to defendant (respondent) H. O. Fortner. In his deposition Clontz testified that defendant Fortner approached him and offered to lend him the money necessary to pay Brim, and offered to act as attorney for Clontz (defendant was a licensed attorney).

Defendant in his deposition testified that Clontz approached him and advised him that he was trying to sell the property in order to pay Brim; that he had a prospective buyer in Utah to whom he thought he would be able to sell the property for more than the amount required, but that he could not conclude such a sale within the time remaining of the period allowed for redemption from the Brim obligation.

December 8th, the day before the expiration of the redemption period, the parties went to the office of E. L. Rayborn, attorney in Twin Falls, to have documents prepared to effectuate an agreement they had reached. Rayborn had acted as one of

plaintiff's attorneys in the action brought by them against Brim. In his deposition, Rayborn testified that the parties advised him they had agreed upon a sale of the property by plaintiffs to defendant Fortner, and an option from Fortner to plaintiffs to buy the property back within sixty days for the sum of $9,853.22, plus $2,000, and plus any other sum or expenses Fortner might incur in protecting his interest in the property in the interim. Rayborn further testified that he accordingly prepared an assignment of the Hawes contract, and a deed, conveying the property from plaintiffs to defendants, also an option from defendants to plaintiffs, as directed; that a loan from defendants to plaintiffs, or interest on such, was never mentioned by either party; and that the documents prepared by him were duly executed and delivered.

Plaintiffs paid the Brim judgment and remained in possession of the property, by their lessee, during the sixty-day period allowed by their option. At the end of that period—the option not having been exercised—plaintiffs' tenant surrendered possession to defendants on or about February 9, 1958. Defendants thereafter continued in possession of the property until early in 1963, when they sold the property to a third person.

January 16, 1963, plaintiffs brought this action, seeking to have the assignment and deed declared a mortgage, and seeking the right to redeem the property therefrom by paying the amount due defendants thereon. Defendants answered April 9, 1963; admitted the execution and delivery of the documents prepared by Rayborn; denied that a loan was made by them to plaintiffs; alleged the defenses of estoppel, laches, and limitations. Thereafter, defendants moved the court for summary judgment. Their motion was supported by the depositions of plaintiff Paul Clontz, defendant H. O. Fortner, and attorney E. L. Rayborn, and by the affidavit of their counsel, John H. Daly. Plaintiffs filed no countershowing and offered no evidence in opposition to the motion, apparently resting their resistance upon the deposition of plaintiff Clontz. The motion was granted and judgment was entered dismissing plaintiffs' action. Plaintiffs brought this appeal from the judgment.

IRCP 56(e), after providing the procedure for supporting or opposing a motion for summary judgment, further provides:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be. If he does not so answer under oath, summary judgment shall be entered against him."

The only error assigned is that the court erred in granting the motion for the reason

**360**

that genuine issues of material fact were shown to exist, which required a trial.

Defendants acknowledged that Clontz, in his deposition, testified as follows:

"A I don't know that I approached Fortner, John. He approached me. He got the news around town some-place. Where he got it I don't know, but Fortner approached me to help me out, to represent me as an attorney and loan me this money. I never went to Fortner and asked him for the money."

"A I told Fortner that I was trying to sell the ranch, and I though I had it sold.

"Q Did you tell him to whom you thought you had it sold?

"A No.

"Q Do you remember anything else that was said?

"A No, I don't.

"Q Did you tell him you wanted him to loan you money?

"A I told him I would borrow it if I couldn't do something else with the ranch."

"Q At the time that this money was paid to Brimm, or to the court for Brimm, which I guess is more accurate, it was paid here in court, you wanted more time in which to try to sell the property for a better price, didn't you.

"A Yes.

"Q And you wanted an additional sixty days?

"A Yes.

"Q And you got that through your dealings with Mr. Fortner?

"A It was the only way I could borrow the money from Fortner was to repay it in sixty days.

"Q You say that was the only reason?

"A I say the only way I could borrow the money. The only way he would let me have the money is if I could repay it in sixty days."

Clontz further testified that the foregoing conversation between Fortner and himself was immediately after the judgment was entered in his action against Brim. Clontz did not remember what was said between them in the several conversations had during the sixty days between this first conversation and their appearance in the office of attorney Rayborn on or about December 8, 1957.

Defendants contend that Clontz's testimony was not sufficient to present a genuine issue as to any material fact. The assignment and deed given by plaintiffs to Fortners were absolute and indefeasible on their face. The burden was upon plaintiffs to show by clear and convincing evidence that a mortgage, and not a sale with right to repurchase, was intended. Gray v. Fraser, 63 Idaho 552, 123 P.2d 711 (1942); Morrison v. Pierce, 47 Idaho 430, 276 P.

306 (1929); Clinton v. Utah Construction Co., 40 Idaho 659, 237 P. 427 (1925); Shaner v. Rathdrum State Bank, 29 Idaho 576, 161 P. 90 (1916).

In Shaner v. Rathdrum State Bank, supra, this court said:

> "It is a well-settled rule of law that where one asserts that a deed shall be given a different construction from that clearly appearing on its face, claiming that it is a mortgage, he must show by clear and convincing evidence that a mortgage, and not a sale with the right to repurchase, was intended. Johnson v. National Bank of Commerce, 65 Wash. 261, 118 Pac. 21, L.R.A.1916B, 4.)" 29 Idaho at 583, 161 P. at 92.

> "A mortgage is an incident of the debt, and without a debt, obligation, or liability there is nothing to secure, consequently there can be no mortgage.
> " * * *

> "Under the law there can be no question that a party can make a purchase of lands, either in satisfaction of a precedent debt or for a consideration then paid, and may at the same time contract to reconvey the land upon the payment of a certain sum, without any intention on the part of either party that the transaction should be in effect a mortgage. There is no absolute rule that the covenant to reconvey shall

be regarded, either in law or in equity, as a defeasance." 29 Idaho at 585, 161 P. at 92.

In Clinton v. Utah Construction Co., supra, this court said:

> " * * * Under the agreement, upon the failure of Hoag, as trustee, to exercise the option to purchase and make the payment of $35,000 within the stipulated time (and it will be noted that in this respect time is of the essence of the contract), defendant retained the property, and all rights of Hoag and the parties represented by him terminated and ended. They were under no obligation to exercise this option, and no liability would attach upon their failure so to do. If they failed to exercise it, all their rights terminated and they had no other claim to the property. If they did exercise it, and made the specified payment, they were entitled to a deed from defendant conveying the property to them. Neither Hoag, as trustee, plaintiffs, cross-complainant, nor Corey Bros. owed the defendant $35,000 or any other amount under the terms of the agreement, and the master's deed was not given in payment of a pre-existing debt or to secure an existing one. No debt existing or having been created, there could be no mortgage, and no right of action accrued whereby defendant could

have recovered a judgment or a deficiency judgment against any of the parties." 40 Idaho at 681, 682, 237 P. at 434, 435.

"It is clear from an examination of the agreement that there was no debt, and, if an action had been brought by defendant to recover the $35,000, the defense would have been interposed that the agreement provided for an option to purchase, which might be exercised or refused, and they refused to exercise it. This would have constituted a complete defense under the agreement.

\* \* \* \* \* \*

" 'The question whether a deed which is absolute in form is to be taken as a mortgage depends upon the intention of the parties in regard to it at the time of its execution. \* \* \* But in order to convert a deed absolute in its terms into a mortgage, it is necessary that the understanding and intention of both parties, grantee as well as grantor, to that effect should be concurrent and the same.' [27 Cyc. 1007]." 40 Idaho at 683, 684, 237 P. at 435.

In that case the court criticised a statement made in Kelly v. Leachman, 3 Idaho 392, 29 P. 849 (1892), that:

" 'When at the time of the execution of an absolute conveyance a separate defeasance or agreement to reconvey is also executed, the transaction at law

will constitute a mortgage.' " 40 Idaho at 687, 237 P. at 436.

and further said:

"The rule above stated is too narrow. See criticism, note 3, p. 234, L.R.A. [N.S.] 1916B. It fails to incorporate other necessary and controlling elements, and eliminates the question of intention of the parties, and encroaches upon their right to contract. In effect, literally speaking, this portion of the opinion holds that a deed, in form an absolute conveyance, expressing the intention of the parties, coupled with possession, payment of taxes, assertion of ownership, and with a positive understanding by the grantee that he had an absolute conveyance and his positive refusal to accept anything but an absolute conveyance, cannot be upheld as such, if at the time of the execution of the deed an agreement was entered into to reconvey the property. Such a holding is contrary to the great weight of authority, and not in harmony with prior and recent decisions of this court." 40 Idaho at 687, 237 P. at 436.

and concluded

"In the case at bar there is no question of forfeiture and no defeasance clause in the agreement. We have but the simple question of the failure to exercise an option, with possible consequential loss suffered by failure or

refusal to take advantage of an existing right within the time stipulated by the parties." 40 Idaho at 688, 237 P. at 437.

In this case no debt owing by plaintiffs to defendants was created by the transaction and none subsisted thereafter. Defendants held the right given them by the option to repurchase the property at a stated price within sixty days. They were free to choose whether they would, or would not, exercise the option. Unless and until they exercised the option they were not indebted to Fortners and Fortners had no obligation which they could enforce against plaintiffs.

In this case the defenses of laches and equitable estoppel were established by the showing made, and plaintiffs raised no genuine issue of material facts relating thereto. Plaintiffs had just concluded an action against Brim, in which they were successful in having an assignment of the selfsame Hawes contract declared to be a mortgage. Having thus gained personal knowledge of the circumstances in which such a conveyance may be held to be a mortgage, Clontz could not be heard to say that he did not understand what his rights might be in the transaction concluded with defendants. Clontz testified that he had not spoken to Fortner about the transaction from the time the latter took possession of the property until after he commenced this action, nearly five years later; that he knew of defendants' efforts to sell the property during that time; and that a third party had gone into possession immediately prior to the time he filed this action. His testimony shows that he treated the conveyance to defendants as absolute and indefeasible. By his silence during all that time; by his failure to assert any right contrary to the tenor of the assignment and deed until after the rights of a third party had intervened; and by such silence, over so long a period, having lead defendants to believe that he recognized the assignment and deed for what they purported to be, he became estopped to change his position or to assert a claim contrary thereto, to the prejudice of defendants and their third party purchaser. Bunn v. Walch, 54 Wash.2d 457, 342 P.2d 211 (1959); Hamud v. Hawthorne, 52 Cal.2d 78, 338 P.2d 387 (1959); Clarke v. Chamberlain, 124 Mont. 405, 225 P.2d 477 (1950); Allred v. Royalty Owners Ass'n, 202 Okl. 561, 216 P.2d 281 (1950); Duncan v. Colorado Investment & Realty Co., 116 Colo. 12, 178 P.2d 428 (1947); Williams v. Grayson, 224 Ark. 207, 273 S.W.2d 844 (1954); Warner v. Gosnell, 8 Ill.2d 24, 132 N.E.2d 526 (1956); Steinhauer v. Botsford, 327 Ill.App. 296, 64 N.E.2d 187 (1945); Dixon v. American Telephone & Telegraph Co., 159 F.2d 863 (2nd Cir. 1947), cert. denied, 332 U.S. 764, 86 S.Ct. 69, 92 L.Ed 350; Davis v. Tennessee Valley Authority, D.C., 214 F.Supp. 229 (1962); 59 C.J.S. Mortgages § 59, p. 105.

In Hamud v. Hawthorne, supra, the supreme court of California said:

"It was not until plaintiffs learned of the interest of an oil company in the subject property that they bestirred themselves to ascertain whether such property was worth an effort on their part to reclaim it. As commented in Livermore v. Beal (1937), 18 Cal.App. 2d 535, 549, 64 P.2d 987, 'one is not permitted to stand by while another develops property in which he claims an interest, and then if the property proves valuable, assert a claim thereto, and if it does not prove valuable, be willing that the losses incurred * * * be borne by the opposite party. This thought was expressed in one case by the following language: "If the property proves good, I want it; if it is valueless, you keep it." ' (See also Robison v. Hanley (1955), 136 Cal. App.2d 820, 824–825 [1–2], 289 P.2d 560." 338 P.2d at 392.

◼ The following statement from 59 C.J.S. Mortgages § 59, p. 105, is applicable here:

"A party who has the right to treat a deed absolute on its face as a mortgage and to redeem from it must be reasonably prompt in asserting such right; very long delay, amounting to laches on his part, may defeat his right to have the deed declared to be a mortgage and his right of redemption, especially if interests of third persons have intervened, or if the grantee has been allowed to deal with the property in such manner that a redemption would seriously prejudice him, and one conclusively chargeable with full knowledge of his rights will not be permitted to excuse his delay in seeking relief on the ground of ignorance of his rights."

And the following from 31 C.J.S. Estoppel § 107, pp. 547–548:

"The term 'quasi estoppel' has been applied to certain legal bars which are in some respects analogous to estoppel in pais and which have the same practical operation as an estoppel in pais, but which nevertheless differ from that form of estoppel in essential particulars. Thus, it has been held that no concealment or misrepresentation of existing facts on the one side, no ignorance or reliance on the other, is a necessary ingredient.

"The doctrine classified as quasi estoppel has its basis in election, ratification, affirmance, acquiescence, or acceptance of benefits; and the principle precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him. The doctrine applies where it would be unconscionable to allow a person to maintain a position inconsist-

ent with one in which he acquiesced, or of which he accepted a benefit."

Clontz also testified that the only persons who knew anything concerning the facts of his transaction with Fortner, were himself, Fortner, and E. L. Rayborn. He foreclosed the possibility of producing other witnesses upon a trial of the issues he claims to have raised.

What was said by the federal court in Dixon v. American Telephone & Telegraph Co., supra, is applicable here:

"The facts bearing on the issue of laches are wholly within plaintiff's knowledge; nothing that could be learned at a trial could add to the data bearing on that issue; with respect thereto, he is in nowise dependant 'on what he can draw out of' the defendants. Had there been a trial, none of the defendants, by their testimony, would have contributed anything concerning the reasons for the delay; if, at a trial, his testimony had been in accord with his affidavits and had been believed, nevertheless dismissal for laches would have been necessary. As a trial would have involved no question of credibility, our precedents are not in point. Since, as to laches, there was no issue of fact but only one of 'law,' the vice of 'trial by affidavits' is here absent, and the summary judgment must be affirmed." 159 F.2d at 864.

In that case plaintiff's unexplained delay of three years was held to preclude his action on the ground of laches.

Judgment affirmed.

Costs to respondents.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.