## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 39274

| | | |
|---|---|---|
| **DONALD E. STEUERER,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Pocatello, August 2013 Term** |
| | ) | |
| v. | ) | **2013 Opinion No. 102** |
| | ) | |
| **N.E.M. RICHARDS, a.k.a. NICKY RICHARDS,** | ) | **Filed: October 2, 2013** |
| | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| **Defendant-Appellant.** | ) | |
| ──────────────────────── | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Lincoln County.  Hon. John K. Butler, District Judge.

The judgment of the district court is <u>affirmed</u>.

The Simms Law Firm, Hailey, for appellant. Christopher P. Simms argued.

Williams, Meservy & Lothspeich, LLP, Jerome, for respondent. Robert E. Williams argued.

─────────────────────

J. JONES, Justice.

This is an appeal from a judgment holding that two deeds executed by Donald Steuerer in favor of N.E.M. Richards were not intended as absolute conveyances, but instead were intended as mortgages to secure loans made by Richards to Steuerer.

### I.
### FACTUAL AND PROCEDURAL BACKGROUND

Steuerer purchased two lots in the City of Shoshone (the Property) in December of 1987 for $3,000. In 1990, Steuerer took up residence on the Property and became acquainted with Richards, who lived across the street. Richards "suffers from various physical and mental disabilities and had been treated for such disabilities at the VA Hospital since approximately 1998. These disabilities have an impact on her ability to recall and organize her thoughts." Between 1990 and 1997 Steuerer and Richards would visit each other from time to time.

In 1997, Steuerer was in need of funds and asked Richards to loan him some money.

1

Richards agreed to loan Steuerer $5,000. Richards made an initial payment of $400 to Steuerer on February 25, 1997. On February 26, Steuerer executed and recorded a warranty deed conveying a half interest in the Property to Richards. Richards paid additional funds for the benefit of Steuerer on May 8, 2000, and Steuerer contemporaneously executed a quitclaim deed to the Property in favor of Richards. The parties later disputed (1) how much Richards had paid to or for the benefit of Steuerer and (2) whether the deeds were intended as absolute conveyances or whether these were lending transactions whereby the deeds were intended to be mortgages to secure repayment of the loans.

Steuerer filed suit against Richards in September of 2010, seeking to quiet title to the Property. He alleged that the deeds were intended as mortgages rather than absolute conveyances. Richards claimed that the deeds were absolute conveyances and that she therefore owns the Property. The matter was tried in July of 2011. On September 8, 2011, the district court issued its Judgment, holding that: (1) the deeds executed by Steuerer to the Property were intended by the parties to be mortgages to secure loans made by Richards to Steuerer; (2) Steuerer must pay to Richards $9,285.11 plus prejudgment interest of $7,395.88; and (3) upon payment of the monetary award, Richards must re-convey the Property to Steuerer. Richards appealed to this Court.

On appeal, Richards states that she "does not argue the findings of fact are clearly erroneous, but instead argues the District Court's conclusions of law are not sustained by the facts found." Therefore, the following findings are extracted from the district court's decision.

> 7.    It appears from the testimony of Richards and Steuerer that their recollections of the events are not necessarily reliable, as to the amounts loaned and when. . . . The court further finds that in February 1997 Richards agreed to loan $5,000.00 to Steuerer and that Richards would pay the money to Steuerer in monthly payments. Based on the evidence, the court can only find that the amount paid by Richards to Steuerer over six (6) months totaled $2,500.00. . . . The court finds that of the $5,000.00, Richards paid $2,500.00 to Steuerer.

> 8.    [T]he first payment by Richards to Steuerer was on February 25, 1997. A Warranty Deed dated February 24, 1997 was prepared, whereby Steuerer conveyed to Richards a one-half interest in the subject property. The deed was notarized and recorded on February 26, 1997. The deed was signed by both Steuerer and Richards. Steuerer testified that the purpose of the deed was to be collateral for the $5,000 loan from Richards. Richards testified in her deposition that the purpose of the deed "was to have some kind of collateral."

9.      Both parties were of the expectation and agreement that the amounts paid to Steuerer by Richards would be repaid by Steuerer and, upon repayment, Richards would re-convey her interest in the subject property to Steuerer. The parties did not agree as to a definite time for repayment, other than to agree that Steuerer would repay the monies as soon as possible or when he could. Richards, prior to the filing of this lawsuit, has never made a demand for repayment. There was no agreement as to any interest to be paid and it was not a topic of discussion in the original agreement.

10.      Prior to June 20, 2011, the last time that Steuerer personally paid any real property taxes on the subject property was on April 2, 1997, in the amount of $201.58. This was for the 1994 property taxes, which were delinquent and the payment was inclusive of the tax, interest, and penalties owed to Lincoln County. In May 2000, Steuerer was delinquent in the payment of his property taxes on the subject property for the prior years of 1995 to 1999. Richards brought the property taxes current by her payments to Lincoln County dated May 8, 2000 and December 20, 2000.

11.      On May 8, 2000, the same day that Richards paid part of the delinquent property taxes on the subject property, Steuerer executed a Quitclaim Deed to the subject property, wherein he conveyed his remaining interest in the subject property to Richards. The deed was notarized and recorded on May 8, 2000. As with the Warranty Deed, the Quitclaim Deed was signed by both Steuerer and Richards. The testimony of Steuerer and Richards is again in conflict as to the reason for the quitclaim deed; however, what is clear is that it was executed contemporaneously with Richards' agreement to pay the property taxes on the subject property. Richards testified that the purpose of the quitclaim deed was the same as the warranty deed, as collateral or "something to assure me that he was going to pay me back."

## II.
## ISSUES ON REVIEW

I.      Did the district court fail to recognize proper legal presumptions and apply all applicable substantive legal standards when it construed the deeds in this case as mortgages?
II.      Did the district court fail to adequately address Richards' equitable arguments?
III.      Is either party entitled to attorney fees on appeal?

## III.
## STANDARD OF REVIEW

This Court limits its review of a trial court's decision to determining "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Shore v. Peterson*, 146 Idaho 903, 907, 204 P.3d 1114, 1118 (2009). When reviewing a

3

trial court's conclusions of law, "this Court is not bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented." *Id.*

> "It is a well-settled rule of law that where one asserts that a deed shall be given a different construction from that clearly appearing on its face, claiming that it is a mortgage, he must show by clear and convincing evidence that a mortgage, and not a sale with the right to repurchase, was intended." *Shaner v. Rathdrum State Bank*, 29 Idaho 576, 583, 161 P. 90, 92 (1916). "The question as to whether the evidence is clear and convincing, that a conveyance absolute on its face is in reality a mortgage, is primarily for the trial court." *Gem–Valley Ranches, Inc. v. Small*, 90 Idaho 354, 363, 411 P.2d 943, 948 (1966).

*Hogg v. Wolske*, 142 Idaho 549, 553–54, 130 P.3d 1087, 1091–92 (2006).

**IV.**

**A.  The district court properly considered the appropriate legal presumptions and applied the substantive law warranted by the facts of the case.**

On appeal, Richards does not argue that the deeds executed by the parties in this case were not intended as mortgages. Rather, Richards argues that the district court failed to recognize legal presumptions and failed to apply the complete body of substantive law to the facts. The district court framed the issue below as follows: "the legal question is whether . . . the Warranty Deed, executed on February 25, 1997, and the Quitclaim Deed, executed [on] May 8, 2000, were intended as a conveyance of title or a mortgage." In laying out the applicable standards, the district court stated:

> "It is settled law of this state that a deed, absolute in form, the terms of which are not ambiguous, may constitute a mortgage." *Jaussaud v. Samuels*, 58 Idaho 191, [202,] 71 P.2d 426, 431 (1937). It is undisputed that [Steuerer] signed a warranty deed and quitclaim deed at different times over to [Richards]. "Where an instrument in writing in the form of a deed of conveyance is executed and delivered as security for a debt, such instrument becomes a mortgage, and not a deed, notwithstanding the form of the instrument." *Bergen v. Johnson*, 21 Idaho 619, 123 P. 484 (1912). This court is aware that the burden is on the plaintiff to establish by clear and convincing evidence that a mortgage, and not a sale, was intended. *Credit Bureau of Preston v. Sleight*, 92 Idaho 210, 216, 440 P.2d 143, [149] (1968). . . . The criteria to consider when determining if a deed was intended to be a mortgage includes,
>
> > (a) existence of debt to be secured; (b) satisfaction or survival of the debt; (c) previous negotiations of parties; (d) inadequacy of price; (e) financial condition of grantor; and (f) intention of parties. While all these factors are to be considered, the controlling test to be applied is whether the grantor sustains the relation of debtor to the grantee after the execution of the instrument. A

4

mortgage is an incident of the debt, and without a debt there can be no mortgage. *Id.*

Based on these substantive legal standards, the district court found that "the deeds executed by [Steuerer] conveying the subject property to [Richards] were intended by the parties to be a mortgage to secure loans and payment of real property taxes made by [Richards] to or on behalf of [Steuerer]."

Richards argues that the district court failed to recognize the presumption that "a fee-simple title is presumed to pass by a grant of real property, and, independent of proof, the presumption arises that an instrument is what it purports on its face to be, an absolute conveyance of land." In support of this argument Richards relies on both Idaho Code § 55-606, which provides "[e]very grant or conveyance of an estate in real property is conclusive against the grantor," and *Gray v. Fraser*, wherein the Court stated:

> A fee-simple title is presumed to pass by a grant of real property, and, independent of proof, the presumption arises that the instrument is what it purports on its face to be—an absolute conveyance of the land. To justify a trial court in determining that a deed which purports to convey land absolutely in fee simple was intended to be something different, as a mortgage, the authorities are uniform to the point that the evidence must be clear, satisfactory, and convincing, and that it must appear to the court beyond reasonable controversy that it was the intention of the parties that the deed should be a mortgage.

63 Idaho 552, 559, 123 P.2d 711, 713 (1942).

However, the district court did consider the presumption that fee simple title passes with the conveyance of real property and required the plaintiff, Steuerer, to show by clear and convincing evidence that a mortgage and not an absolute conveyance was intended. Based on its findings, the district court concluded it to be "clear that, at the time of the execution of the two deeds, Steuerer was not intending to sell and Richards was not intending to purchase the subject property." After considering the facts, the district court properly determined there was clear and convincing evidence that the parties intended for the deeds to be mortgages, rather than absolute conveyances.

Richards argues that the district court erred by failing to address this Court's statement in *Jaussaud*, that "a mortgagor subsequent to executing the mortgage may sell his equity of redemption to the mortgagee; that is, a mortgagee may legally take a deed transferring the mortgaged property in satisfaction of the debt and legally give an option to purchase back." 58 Idaho at 202, 71 P.2d at 431. Richards contends that the "right to repurchase" is a competing

5

principle of substantive law and is the legally presumed state of affairs when a deed secures a debt.

This case, however, does not invoke the substantive law addressing a mortgagor's "right to repurchase." No facts in the record indicated that Richards took the deeds in satisfaction of the debt owed by Steuerer. Rather, the district court expressly found the opposite, stating "[b]oth parties were of the expectation and agreement that the amounts paid to Steuerer by Richards would be repaid by Steuerer and, upon repayment, Richards would re-convey her interest in the subject property to Steuerer." Because Richards did not take the deeds executed by Steuerer in satisfaction of his indebtedness, the substantive law regarding the "right to repurchase" is not at issue in this case.

Richards argues that the district court failed to recognize the most critical factor in determining whether a deed, absolute on its face, is a mortgage—whether the debt survived the transfer. Richards cites the six factors set out in *Sleight*, contending the district court failed to properly consider whether Steuerer remained indebted to Richards following the execution of the deeds.

Richards' contention is puzzling given that the district court cited to *Sleight*, the very case Richards relies upon, for the proposition that "the controlling test to be applied is whether the grantor sustains the relation of debtor to the grantee after the execution of the instrument." The district court concluded that Steuerer owed money to Richards "before and after the deeds were executed and/or recorded; therefore, the debt existed at the time of the deed transfer and survived after the transfer." Thus, the district court did recognize survival of the debt as the controlling factor and the district court unequivocally found that the debt owed by Steuerer to Richards prior to execution of the deeds survived the transfer of both deeds.

Lastly, Richards argues that the district court failed to consider or even acknowledge the requirement in *Clontz v. Fortner*, 88 Idaho 355, 399 P.2d 949 (1965), that both parties must concurrently intend to convert a deed into a mortgage. To "convert a deed absolute in its terms into a mortgage, it is necessary that the understanding and intention of both parties, grantee as well as grantor, to that effect should be concurrent and the same." *Id.* at 362, 399 P.2d at 952.

However, the district court acknowledged the *Clontz* requirement by reciting from *Parks v. Mulledy*, 49 Idaho 546, 551, 290 P. 205, 207 (1930), that "[t]he intention of the parties at the time an agreement to execute a deed is consummated is determinative of whether the title is

6

irrevocably transferred, or the conveyance is merely as security for the payment of a debt or performance of an obligation." The district court then specifically found that both parties testified "in one form or another, that the subject property, at the time of the loan, was intended as collateral." Thus, the district court did consider the testimony of both Richards and Steuerer to determine their concurrent intentions at the time the deeds were executed.

B.    The district court adequately addressed Richards' equitable arguments.

Richards devotes two pages of her opening brief to a mélange of arguments sounding in equity. She contends that Steuerer does not have standing "to have the courts declare the transaction of the parties an equitable mortgage" because he failed to tender payment of the indebtedness, does not have clean hands, and is barred by estoppel and laches. Richards moves from one theory to the other without particularly developing any cohesive argument.

Richards' initial contention is that Steuerer did not have standing to seek to have the deeds declared to be mortgages because he had not offered to pay the amount of the indebtedness. She points out that in *Shaner*, this Court stated that where a party attempts "to have a deed declared a mortgage, . . . equity requires the party so asking to tender an offer to pay the amount of the debt and interest before he is entitled to any standing in a court of equity." 29 Idaho at 586, 161 P. at 93. However, in *Dickens v. Heston*, we noted that the plaintiff in *Shaner* was required by the terms of the contract to repurchase to pay the purchase price within one year and failed to do so. 53 Idaho 91, 105, 21 P.2d 905, 910 (1933). In discussing a tender of payment as a standing requirement, the *Dickens* Court explained:

> Nor is it true that the debtor who has given a deed absolute in form, as security for the payment of his debt, must, under all circumstances, tender payment before he can litigate the character of the instrument; as, for example, where the debt is not due, and the grantee asserts an absolute title, or is attempting to sell and convey to a stranger. A court of equity will not tie its hands by an unbending rule, which would require it to impose inequitable terms, or do any injustice in a given case falling within a general class, though having peculiar or distinguishing features.

*Id.* at 105–06, 21 P.2d at 910 (quoting *Bradbury v. Davenport*, 46 P. 1062, 1065 (Cal. 1896)). Thus, a plaintiff's failure to tender payment will not affect his standing where the debt is not due.

In this case, the district court found that "[t]he parties did not agree as to a definite time for repayment, other than to agree that Steuerer would repay the monies as soon as possible or when he could." Furthermore, the district court found that "Richards, prior to the filing of this law suit, has never made a demand for repayment" and "[t]here was no agreement as to any

interest to be paid and it was not a topic of discussion in the original agreement." Richards testified that she did not make a demand for payment because she does not "believe in pressing people for money." Because the parties' agreement provided no express time for repayment and Richards made no demand for payment, the debt was not due. Thus, Steuerer's failure to tender payment did not impact his standing before the district court.

Richards also argues that under *Clontz*, laches and equitable estoppel bar Steuerer's claim because Steuerer sat silent while Richards paid property taxes on the property she believed she owned until Steuerer learned that the Property had some commercial value. In *Clontz*, the plaintiffs agreed to sell the defendants a piece of property, and the defendants agreed to sell the plaintiffs an option to buy the property back within sixty days. 88 Idaho at 359, 399 P.2d at 950. By the end of the sixty-day period, plaintiffs had failed to exercise their option and surrendered possession of the property to the defendants. *Id*. The defendants then possessed the property for five years before selling it to a third party. *Id*. Shortly after the sale, "plaintiffs brought [an] action, seeking to have the . . . deed declared a mortgage, and seeking the right to redeem the property therefrom by paying the amount due defendants thereon." *Id.* The defendants moved for summary judgment on various grounds, including the defenses of laches and equitable estoppel. *Id*. The district court granted summary judgment, and this Court affirmed because the plaintiffs completely relinquished the property to the defendants, and the plaintiffs' testimony showed that they treated the conveyance to the defendants as absolute, failed to assert any right contrary to the deed, and remained silent while defendants asserted ownership rights over the property. *Id*. at 363, 399 P.2d at 953. Thus, the plaintiffs were estopped to change their position or to assert that the deed was intended as a mortgage. *Id*.

Here, unlike the plaintiffs in *Clontz*, Steuerer never relinquished possession of the Property. The district court found that "[a]t all times relevant, between 1997 and 2010, Steuerer continued to occupy the subject property and was not paying any rent to Richards; nor had Richards demanded the payment of rent." Furthermore, unlike the plaintiffs' testimony in *Clontz*, the testimony of both Steuerer and Richards indicated that the conveyances were not intended to be absolute. As Richard stated in her deposition, the purpose of both deeds was "to assure me that he was going to pay me back." The district court did not squarely address or rule upon Richards' perfunctory arguments on laches and estoppel, possibly because the underlying predicate for the argument—that Steuerer had relinquished possession of the Property and had

8

treated the deeds as absolute conveyances—had not been established. The district court's findings that the indebtedness continued to exist, that there was no definite time for repayment, and that Richards had made no demand for payment, certainly had an indirect bearing on these theories.

After the parties had filed their briefs on appeal, the Court issued a decision in which we concluded "that the statute of limitations does not bar a claimant who has purchased real property and is in possession of that property from asserting a claim for specific performance. A claim for specific performance does not begin to run against a claimant in possession until the claimant's possession is interrupted." *Peterson v. Gentillon*, 154 Idaho 184, 190, 296 P.3d 390, 396 (2013). In that case we favorably quoted from *Richards v. Richards*, 76 S.E.2d 492, 497 (Ga. 1953) that "[i]t is well settled that neither laches nor the statute of limitations will run against one in peaceable possession of property under a claim of ownership for delay in resorting to a court of equity to establish his rights." 154 Idaho at 189−90, 296 P.3d at 395−96. Here, Richards concedes that Steuerer was in possession of the Property and was never asked to vacate. Thus, Steuerer was in peaceable possession of the Property, and under *Peterson v. Gentillon*, laches does not apply.

## C.    Steuerer is entitled to an award of attorney fees.

Steuerer seeks attorney fees under Idaho Code § 12-121. "In any civil action, the judge may award reasonable attorney's fees to the prevailing party." I.C. § 12-121. "An award of attorney fees under Idaho Code § 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009). The Court, "[w]hen deciding whether attorney fees should be awarded under I.C. § 12-121," must take into account the "entire course of the litigation . . . and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation." *Id.*

Here, Richards did not present a single legitimate issue on appeal. Not only were all of her claims without merit, but at times her contentions of error were directly and clearly rebutted by the district court's findings. She accepted the district court's factual findings but then appeared to question some of them in her argument. Thus, Richards brought this case

9

frivolously, unreasonably, or without foundation and Steuerer is therefore entitled to attorney fees on appeal under I.C. § 12-121.

## V.
## CONCLUSION

The judgment of the district court is affirmed and Steuerer is awarded his costs and attorney fees.

Chief Justice BURDICK, and Justices EISMANN, W. JONES, and HORTON CONCUR.